No. 57,548

State of Kansas, *Appellee*, v. Leslie Dewayne Yarrington, *Appellant*.

(708 P.2d 524)

Opinion filed October 25, 1985.

*Ernest Tousley*, of Wichita, argued the cause and *Philip J. Bernhart*, of Coffeyville, was on the brief for appellant.

*R. D. Canaday*, assistant county attorney, argued the cause and *Robert T. Stephan*, attorney general, and *Jeffrey A. Chubb*, county attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: Leslie Dewayne Yarrington appeals from his conviction by a jury of one count of first-degree murder (K.S.A. 21-3401). He asserts several points on appeal, none of which constitutes reversible error.

On the afternoon of January 14, 1984, the body of Nicki Merrill, a resident of Parsons, Kansas, was discovered lying near his car in a wheat field approximately four miles southeast of Coffeyville, Kansas. He died from a single .22 caliber bullet wound to the right temple. A gun which could have fired the fatal shot was found near the victim's hand. Merrill had last been seen alive around 7:00 p.m. on January 13, 1984, as he left work in Parsons, Kansas.

Investigation of the area where the car and body were found revealed no evidence that any other person or automobile had been at the scene. The victim's car and its contents were described as extremely neat with no signs of a scuffle or altercation. No blood was found in or on the car. Due to the extreme cold, the time of death was difficult to establish and the coroner could only state that death could have occurred at any time from one-half hour to a day before the body was found. Dr. Uy, the pathologist who performed the autopsy, was of the opinion the shot was fired at a distance of two to six inches from the head. No other abrasions or contusions were found on the body. Tests of the victim's hands to determine whether he had fired a gun recently were inconclusive. Neither the coroner nor the pathologist could determine whether the death was a suicide or a homicide.

The victim's family was convinced the death was not a suicide. Merrill did not own a handgun, had not been depressed, had no close friends in Coffeyville, had no reason to be in Coffeyville and the family knew of no reason why Nicki would commit suicide. The victim's wife, Crissy, had formerly dated the defendant and was known to have been seeing him prior to the death. The victim's family furnished the defendant's name to law enforcement authorities as a possible suspect. The family hired a private investigator who determined that the weapon found at the scene was sold to the defendant in 1981 by one Chuck Farrow. At trial, Farrow identified the gun as the one he sold to the defendant. Less than two weeks after the death, Crissy

Merrill and the defendant moved to Broken Bow, Oklahoma, where they openly lived together. In April, 1984, they split up and Crissy returned to Coffeyville. The defendant's father testified that Crissy and his son had visited him in Coffeyville during the fall of 1983 at a time when she was married to the victim. He also testified that in a telephone conversation with his son on April 9, 1984, the defendant was extremely upset and emotional, and the witness understood the defendant to say he had killed Nicki Merrill. The evidence at trial also disclosed that the defendant utilized a pay telephone close to his father's home in Coffeyville to make contact with Crissy Merrill. The Merrill telephone bills revealed a call from the Merrill home to this pay station between midnight and 1:00 a.m., January 14, 1984, and a collect call from the same pay phone to the Merrill residence at 7:07 p.m., January 14, 1984. Defendant's father testified that shortly after his son arrived around 11:00 p.m. on January 13, 1984, he left to go to the pay telephone stating he was going to call Crissy. During the trial, in a proceeding outside the presence of the jury, Crissy Merrill refused to testify, invoking her Fifth Amendment rights. Other facts will be stated as they pertain to the various issues.

The first issue raised on appeal is whether the trial court erred in failing to instruct the jury on the lesser included offenses of voluntary and involuntary manslaughter. The jury was instructed on both first- and second-degree murder. Yarrington's defense was that he had nothing to do with the death, was not present, did not know the victim and had no reason to kill him. The district court's duty under K.S.A. 1984 Supp. 21-3107(3) to instruct on lesser offenses only arises when the evidence at trial would support a conviction of the lesser offense. *State v. Pearson*, 234 Kan. 906, 918, 678 P.2d 605 (1984). Here, there was no evidence which would support instructions on manslaughter and involuntary manslaughter and the court was correct in not giving such instructions.

The next two issues relate to several photographic slides of the victim's body shown during the trial. It appears that several slides were shown during the trial without the judge having taken the precaution of seeing them in advance of trial. After the slides had been shown and were offered in evidence, the court allowed their admission with the exception of two, which were

found to be repetitious, and one, which was blurred and unclear. The first objection is that the court erred in allowing the slides that were not subsequently admitted into evidence to be shown to the jury. The other issue is whether the trial court erred by admitting allegedly gruesome slides into evidence.

When pictures are to be offered through the utilization of slides and a projector, the court should view the same outside the presence of the jury, unless their admissibility has been agreed to, in order to avoid showing to the jury what may be determined to be inadmissible evidence. The admissibility of photographic evidence lies within the discretion of the trial court, and its decision to admit such photographs must be accepted on appellate review absent a showing of an abuse of discretion. *State v. Kendig*, 233 Kan. 890, 893, 666 P.2d 684 (1983). Further, unless the jury's viewing three slides, two repetitious and one blurred, is shown to have prejudicially affected the substantial rights of Yarrington, any error will not require reversal. *State v. Mitchell*, 234 Kan. 185, 196, 672 P.2d 1 (1983). After examining the slides in question, we conclude no reversible error occurred in allowing the jury to view the three slides which were not admitted in evidence. Two merely duplicated slides that were admitted, and the third was blurred and not a good image of what it portrayed. *State v. McCorgary*, 224 Kan. 677, 585 P.2d 1024 (1978). No prejudice has been shown which would justify reversal.

Turning to the defendant's contention that the slides were unduly repetitious, gruesome, and added little to the State's case, the general rule is that photographs that accurately portray what they purport to show are admissible in evidence. *State v. Murdock*, 236 Kan. 146, 152, 689 P.2d 814 (1984). In *State v. Pearson*, 234 Kan. 906, the court stated:

"The law is well settled in this state that in a crime of violence which results in death, photographs which serve to illustrate the nature and extent of the wounds inflicted are admissible when they corroborate the testimony of witnesses or are relevant to the testimony of a pathologist as to the cause of death, even though they may appear gruesome." p. 918.

The slides Yarrington complains of here, while unpleasant, depict the autopsy and were used by the pathologist and investigators in their testimony. The slides appear to accurately depict the procedure used to determine the angle of entry of the bullet

and the extent of the wounds inflicted. The slides were not unduly repetitious or gruesome and were properly admitted.

The next issue raised is whether the court erred in admitting the .22 caliber revolver in evidence. Due to the condition of the bullet removed from the victim's head, it was impossible to determine with certainty whether the fatal shot came from the gun found at the scene. Defendant appears to argue that the link of the weapon to him in 1981 is too remote and that the gun may not have caused the death. He also contends that the inability to determine from lead residue tests of the hands that the victim had not fired the weapon somehow links the gun to the victim. The mere inability to ascertain with certainty that the victim did not fire the weapon does not imply that he did fire it. None of the arguments have merit. The gun was obviously relevant evidence (K.S.A. 60-407[f]) and was readily admissible. See *State v. Reynolds*, 230 Kan. 532, 639 P.2d 461 (1982).

Next, the defendant asserts error in the admission of certain hearsay testimony. During the direct examination of the undersheriff, the prosecution, in questioning the witness, received a brief answer containing a hearsay statement attributed to the victim's brother. No contemporaneous objection was made to the testimony as required by K.S.A. 60-404. During cross-examination defense counsel, evidently in an attempt to avoid the dictates of the statute, led the witness through the same testimony again and then objected to it and asked that all the testimony on the issue be stricken. No authority is cited by defendant for the action of eliciting objectionable testimony a second time on cross-examination in order to preserve an otherwise untimely objection. This issue needs no further consideration.

The defendant also complains that letters from Crissy Merrill to him were improperly admitted because they are hearsay and denied the defendant his right of confrontation.

K.S.A. 60-460 defines hearsay evidence and makes it inadmissible subject to exceptions found in that section. The statute defines hearsay as "[e]vidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated." In the present case, the letters were discovered on the defendant's person at the time of his arrest. The fact that the defendant received and had in his possession letters sent by the victim's wife was a fact of independent legal significance tending to link Yarrington and the

victim's wife. While the letters would be hearsay if used to prove the facts contained therein, in the present situation they were not offered to prove the truth of their contents and therefore, if relevant, were not barred as hearsay. The letters were obviously relevant and no error is shown.

Yarrington contends the trial court erred by instructing the jury on first-degree murder because no evidence was presented to establish premeditation. K.S.A. 21-3401 defines first-degree murder as ". . . the killing of a human being committed maliciously, willfully, deliberately and with premeditation . . . ." Premeditation may be established by circumstantial evidence, and may be inferred from the established circumstances of the case provided the inference is reasonable. The jury has the right to make the inference. *State v. Hill*, 233 Kan. 648, 652, 664 P.2d 840 (1983). Considering that defendant's father testified he understood defendant to say he killed Merrill; that the evidence indicated an ongoing relationship between the defendant and the victim's wife; that the defendant's gun was found with the body and all of the other evidence which need not be detailed here, it is clear that the inference of premeditation as found by the jury was reasonable and supported by the evidence.

The final issue raised by the defendant is whether the State proved the corpus delicti for homicide. The term "corpus delicti" means the body of the offense—the substance of the crime. As applied in homicide cases it has at least two component elements: (1) the fact of death, and (2) the criminal agency of another person as the cause thereof. 40 Am. Jur. 2d, Homicide § 4, p. 297; *State v. Doyle*, 201 Kan. 469, Syl. ¶ 1, 441 P.2d 846 (1968).

The first element was met in the present case by the discovery of Merrill's body. The remaining question is whether the defendant's confession along with the other circumstantial evidence in the case establishes the second element, the criminal agency of another. "It appears that while the corpus delicti cannot be established by the extrajudicial confession of the defendant unsupported by any other evidence, it may be established by such a confession corroborated by other facts and circumstances." 40 Am. Jur. 2d, Homicide § 285, p. 551. In *Doyle*, 201 Kan. at 469, the court stated that the corpus delicti may be proved in whole or in part by direct testimony or by

indirect and circumstantial evidence. Without repeating the facts already set forth, we have no hesitancy in finding that the State adequately proved the corpus delicti in this case.

No reversible error having been shown, the judgment is affirmed.