No. 63,197

STATE OF KANSAS, *Appellee*, v. JACK LEROY SPEARS, *Appellant*.

(788 P.2d 261)

Opinion filed March 2, 1990.

*Thomas J. Burgardt*, of Calihan, Brown, Osborn, Burgardt & Wurst, of Garden City, argued the cause and was on the brief for appellant.

*Ricklin R. Pierce*, county attorney, argued the cause, and *Larry C. Hoffman*, assistant county attorney, and *Robert T. Stephan*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

MCFARLAND, J.: Jack Leroy Spears appeals his jury trial convictions of first-degree felony murder (K.S.A. 21-3401), aggravated robbery (K.S.A. 21-3427), theft (K.S.A. 1987 Supp. 21-3701), and forgery (K.S.A. 21-3710).

Defendant arrived in Garden City on October 25, 1986, without money, means of transport, or possessions other than the clothes he was wearing. He went to the residence of a friend, Courtney Johnson. He asked Johnson to take him to Randy Bolay's home on Kello Street. Johnson complied and saw defendant enter the Bolay residence.

That evening, Bolay and defendant attended a party. Considerable drinking occurred and Bolay boasted of having $600 in cash in his possession for his planned vacation. Bolay and defendant left the party in Bolay's pickup at approximately 3:30 a.m. on October 26. Defendant was seen leaving the Bolay residence at 10:30 a.m. He went to a local drive-in where he paid for his purchases with money taken from a large roll of bills. That morning defendant came across another friend, Robert Guerttman. While the two were together, Guerttman received word his mother had died in Iowa. Defendant stated he had a pickup truck and offered to drive Guerttman to Iowa for the funeral. The following day, defendant cashed a $100 check drawn on Bolay's account. On the same day, defendant had another friend pawn a television set for $55 on his behalf. Defendant drove to Ottumwa, Iowa, on October 28 in a yellow Toyota pickup truck. He went to the home of a friend, James Breeding. That evening he told Breeding he had beaten a man to death and that the victim would not be found for a while. On October 30, 1986, defendant was arrested for DUI in Iowa while driving the pickup. He told a passenger that he might be using a different name when he talked to the arresting officer.

On November 5, 1986, Randy Bolay's body was found in his Garden City residence. Cause of the death of the decomposing body was found to be multiple head wounds from a bladed object. Defendant was arrested in Iowa and returned to Garden City.

The pickup defendant was driving belonged to Bolay. Bloody palm prints and fingerprints in the Bolay residence belonged to defendant. The pawned television set was the property of Bolay. Belongings of Bolay were found in the pickup. In defendant's duffel bag were cards belonging to Bolay and some bloody items. The blood was identified as being Bolay's. The signature on the check cashed by defendant on Bolay's account was found to have

been forged by defendant. Other facts will be stated as necessary for the discussion of particular issues.

For his first issue, defendant contends the language employed in the amended information on the count charging aggravated robbery was insufficient. The count states:

"That on the 26th day of October, 1986, in said County of Finney and State of Kansas, one Jack Leroy Spears did then and there unlawfully, feloniously and willfully take property, cash money, wallet, bank deposit slip, and pick-up from the person or presence of Randall C. Bolay by inflicting great bodily harm to the person of Randall C. Bolay. Contrary to and in violation of K.S.A. 21-3427, Aggravated Robbery, a Class B felony."

K.S.A. 21-3427 provides:

"Aggravated robbery is a robbery committed by a person who is armed with a dangerous weapon or who inflicts bodily harm upon any person in the course of such robbery."

The underlying crime of robbery is defined by K.S.A. 21-3426 as follows:

"Robbery is the taking of property from the person or presence of another by threat of bodily harm to his person or the person of another or by force."

K.S.A. 22-3201 provides that the indictment, information, or complaint shall be a plain and concise written statement of the essential facts constituting the crime charged and when drawn in the language of the statute shall be deemed sufficient. However, the exact statutory words need not be used if the meaning is clear. *State v. Vakas*, 242 Kan. 103, Syl. ¶ 3, 744 P.2d 812 (1987).

Defendant challenged the sufficiency of the count in a motion for arrest of judgment, which motion was denied.

Is the aggravated robbery count fatally flawed? We believe not. The count states defendant took property from Randy Bolay by inflicting great bodily harm to the person of Randy Bolay. This is a clear statement that the taking was by force and bodily harm occurred from the application of that force.

Defendant next argues that, inasmuch as his conviction for aggravated robbery is invalid, then the felony-murder conviction must also fall as aggravated robbery is the underlying felony in the felony-murder charge. This issue is rendered moot by our holding in the preceding issue.

For his third issue, defendant contends the trial court abused its discretion in admitting certain autopsy photographs and a videotape of the crime scene. The victim was hit on the head at least twenty-four times with what was later identified as a hatchet. A witness used the photographs to illustrate his testimony as to the injuries inflicted upon the deceased. Due to the spherical shape of the human cranium, five photographs were necessary to portray all of the wounds.

The law is well settled in this state that, in a crime of violence which results in death, photographs which serve to illustrate the nature and extent of the wounds inflicted are admissible when they corroborate the testimony of witnesses or are relevant to the testimony of a pathologist as to the cause of death, even though they may appear gruesome. *State v. Shehan,* 242 Kan. 127, Syl. ¶ 8, 744 P.2d 824 (1987); *State v. Yarrington,* 238 Kan. 141, Syl. ¶ 4, 708 P.2d 524 (1985). The admissibility of photographic evidence lies within the discretion of the trial court, and its decision to admit such photographs must be accepted on appellate review absent a showing of an abuse of discretion. *State v. Shehan,* 242 Kan. 127, Syl. ¶ 7; *State v. Yarrington,* 238 Kan. 141, Syl. ¶ 3. An abuse of discretion may be reached if the admitted photographs were unduly repetitious and cumulative or their introduction was solely for the purpose of prejudice. See *State v. Randol,* 212 Kan. 461, 467, 513 P.2d 248 (1973).

The crime scene videotape shows the body and relevant conditions in the residence. No specific objection to the videotape is made.

Certainly, the photographs and videotape herein are grim. This was a brutal crime and the body was not found for approximately ten days. The admission of the photographs and the videotape served legitimate evidentiary purposes. We find no abuse of discretion in their admission.

For his fourth issue, defendant contends the trial court erred in permitting Kenneth Armbeck to testify. Some background facts must be stated. Armbeck and defendant shared a cell in the Finney County jail for approximately three weeks. Armbeck stated that defendant talked to him at length about all facets of the crimes herein and consulted with him as defendant was preparing a written factual statement for his attorney. The State

admits Armbeck read the document. Defendant contends he did not so converse with Armbeck and that Armbeck could only have obtained the details of the crimes by surreptitiously reading the document which defendant had hidden under his mattress. Defendant argues the document was protected by an attorney-client privilege. Armbeck's testimony gives a detailed account of the crimes.

K.S.A. 60-426 provides:

"(a) *General rule.* Subject to K.S.A. 60-437, and except as otherwise provided by subsection (b) of this section communications found by the judge to have been between lawyer and his or her client in the course of that relationship and in professional confidence, are privileged, and a client has a privilege (1) if he or she is the witness to refuse to disclose any such communication, and (2) to prevent his or her lawyer from disclosing it, and (3) to prevent any other witness from disclosing such communication if it came to the knowledge of such witness (i) in the course of its transmittal between the client and the lawyer, or (ii) in a manner not reasonably to be anticipated by the client, or (iii) as a result of a breach of the lawyer-client relationship. The privilege may be claimed by the client in person or by his or her lawyer, or if an incapacitated person, by either his or her guardian or conservator, or if deceased, by his or her personal representative."

K.S.A. 60-437 provides:

"A person who would otherwise have a privilege to refuse to disclose or to prevent another from disclosing a specified matter has no such privilege with respect to that matter if the judge finds that such person or any other person while the holder of the privilege has (a) contracted with a party against whom the privilege is claimed that he or she would not claim the privilege or, (b) *without coercion, or without any trickery, deception, or fraud practiced against him or her, and with knowledge of the privilege, made disclosure of any part of the matter or consented to such a disclosure made by anyone."* (Emphasis supplied.)

Judge Gard, in his Code of Civil Procedure 2d, states:

"Clause (b) requires that the waiver which results from prior disclosure must be voluntary and not obtained through ignorance of the privilege or through coercion or fraud. But if a privilege is waived as to a part of the subject matter, so that it has lost its confidential character, the waiver must, in justice, apply to the whole of the matter. No picking and choosing is permitted." 1 Gard's Kansas C. Civ. Proc. 2d Annot. § 60-437 (1979).

The trial court did not rule upon whether or not defendant discussed the crimes with Armbeck. The trial court's rationale in permitting Armbeck to testify is as follows:

"Based upon the arguments of counsel presented here this morning, the Court cannot say that, based upon what is available to the Court, that a person incarcerated in the Finney County Jail or other penal institution has any reasonable expectation of privacy. There is no allegation by either side that this was in the course of transmittal between the client and the attorney, other than there was a written memorandum which was being prepared by the client for the attorney. There is a factual dispute as to whether or not Mr. Armbeck may have surreptitiously obtained this information without the knowledge of the client. It is alleged by defense that it was or could have been viewed while the defendant was out of his cell. The State's position on the other side is that the statement was voluntarily given by the defendant to his cellmate, the witness in this case, and was read, questions asked, and so forth. But based upon the Court's previous findings, the Court must conclude that whether or not it was observed voluntarily or involuntarily, the fact that there was no reasonable expectation of privacy should have alerted the client, in this instance, and is particularly so where it is urged that these parties were not on the best of relationships, that that could have been observed or viewed by Mr. Armbeck. The Court would conclude, therefore, that under the circumstances presented, the communication or the information was in fact communicated to a third person, and that there is no longer the privilege of attorney-client relationship, as to the communications involved. This finding is based upon the provision of 60-426 and that of 60-437, regarding the waiver of privilege."

Defendant testified that he could have taken the document with him when he was absent from the cell and, thus, kept it from Armbeck. He also indicated he and Armbeck did not get along with each other. Even under defendant's version it would appear quite likely that Armbeck would look at the document in defendant's absence. There is no claim Armbeck was planted in the cell by the police to obtain information.

Under the facts herein, we find no error or abuse of discretion in the admission of the Armbeck testimony.

For his final issue, defendant contends the trial court erred in denying his request to include in the instructions precisely what property was alleged to have been taken in the armed robbery and the theft. The complained-of instructions are as follows:

"In Count II, the defendant is charged with the crime of aggravated robbery. The defendant pleads not guilty.

"To establish this charge each of the following claims must be proved:
1. That the defendant intentionally took property from the person of Randall C. Bolay;
2. That the taking was by force;

3. That the defendant inflicted bodily harm on any person in the course of such conduct; and
4. That this act occurred on or about the 26th day of October, 1986, in Finney County, Kansas."

"In Count III, the defendant is charged with the crime of theft of property of a value less than one hundred and fifty dollars. The defendant pleads not guilty.

"To establish this charge each of the following claims must be proved:
1. That Randall C. Bolay was the owner of the property;
2. That the defendant obtained or exerted unauthorized control over the property;
3. That the defendant intended to deprive Randall C. Bolay permanently of the use or benefit of the property;
4. That the value of the property was less than one hundred and fifty dollars; and
5. That this act occurred on or about the 26th day of October, 1986, in Finney County, Kansas."

In the amended information, defendant was charged with aggravated robbery by taking from the victim "property, cash money, wallet, bank deposit slip, and pick-up." The theft count charged defendant with the taking of the victim's television set.

The testimony of Kenneth Armbeck clearly provided evidence separating the two counts. As to the aggravated robbery count, Armbeck testified defendant took immediate possession of the victim's property, a wallet, checkbook, keys, and pickup truck. On the theft count, Armbeck testified the defendant, needing additional money, returned to the victim's apartment one day after the murder, took the television set and had a friend pawn it for him.

In the closing argument, the State made it clear that the two counts involved different property, taken at different times (the television set being the property involved in theft).

In his brief argument on this issue, defendant states:

" 'The principal damages raised by a multiplicitous indictment [is] the possibility that the Defendant will receive more than one sentence for a single offense.' *United States v. Hearod,* 499 F.2d 1003, 1005 (5th Cir. 1974); *State v. Dorsey,* 224 Kan. 152, 154-155, 578 P.2d 261 (1978); *State v. Stoops,* 4 [Kan. App. 2d] 130, 136, 603 P.2d 221 (1980)."

In the case herein, the amended information does specify what property is alleged to have been taken in each count. Hence, we do not have charges which could be said to be multiplicitous.

The only evidence that the television set was taken the day following the murder as an afterthought comes from Armbeck. Without his testimony all property would have been assumed to be part of the aggravated robbery proceeds. There was abundant evidence of property taken in the aggravated robbery. We think it highly unlikely that the jury could have been misled by the jury instructions herein—particularly since the theft charge was only misdemeanor theft. However, on the possibility there was some confusion, we reverse the theft conviction. The trial court should have specified the property alleged to have been taken in each of the crimes, especially where defendant had requested that this be done.

The judgment is affirmed in part and reversed in part.