**Leslie Dewayne YARRINGTON, Petitioner,**

v.

**Steven DAVIES, Respondent.**

**No. 89–3412–S.**

United States District Court, D. Kansas.

Dec. 23, 1991.

Charles A. O'Hara, pro se.

Jay W. Watson, Asst. Atty. Gen., Topeka, Kan., for respondent.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner, who is an inmate in the Kansas State Correctional Facility, Norton County, Kansas, was convicted by a jury of first degree murder in October, 1984. 238 Kan. 141, 708 P.2d 524. In this action, petitioner challenges his conviction and claims he was denied the effective assistance of counsel during his trial. Specifically, petitioner claims: (1) counsel was not familiar with the proper burden of proof and during voir dire and opening argument, shifted the burden to the defendant to prove his innocence; (2) counsel did not properly voir dire the jury and failed to properly examine and

cross-examine witnesses; and (3) counsel did not make objections to the improper introduction of evidence, particularly hearsay evidence attributed to a subpoenaed witness who invoked the Fifth Amendment's protection against self-incrimination.

Having reviewed the record in this matter, the court makes the following findings and order.

*Factual Background*

On January 14, 1984, the body of Nicki Merrill of Parsons, Kansas was found next to his car in a field outside Coffeyville, Kansas. Death was caused from a bullet wound to the right temple. The surrounding area showed no signs of a struggle and there was no evidence that any other person or automobile had been at the scene. Because of the cold temperatures, the time of death could have been anywhere from one-half hour to one day before the body was found. There were no bruises or abrasions on the body. It could not be determined if the bullet which killed Merrill was fired from a gun found near his hand.

Merrill's death was initially listed as a suicide. Merrill's family, which included his wife Crissy and a young son, was convinced that his death was not a suicide.

A few weeks after Merrill's death, petitioner and Crissy began living together and shortly thereafter, they moved to Broken Arrow, Oklahoma. The record is unclear as to the reason, but after a short time in Broken Arrow, Crissy returned to Parsons. Petitioner's name was furnished to police as a likely suspect in Merrill's death and he was charged with first degree murder on April 14, 1984.

There was evidence which placed petitioner at his father's home in Coffeyville late Friday evening, January 13, 1984 and during the day on Saturday, January 14, 1984. The evidence also showed petitioner left his father's home late Friday evening stating he was going to call Crissy. Telephone records show a call was made from Crissy's phone to a pay phone at the Derby station in Coffeyville at 1:00 a.m. on Saturday and another call from the pay phone to Crissy's home at 7:00 p.m. on Saturday. Petitioner denied making those calls.

There was also testimony that the gun found by Merrill's body had been stolen by Chuck Furrow in 1979. Furrow testified he sold the gun to petitioner in 1981. Petitioner denied that he ever purchased or possessed the gun.

David Yarrington, petitioner's father, testified that in a phone call from his son in Broken Arrow, he understood petitioner to say he had killed Merrill. On cross-examination, David admitted he had a hearing problem and could not be sure of what petitioner said.

Crissy Merrill, who had testified at a preliminary hearing, invoked the Fifth Amendment's protection against self-incrimination and refused to testify at trial. She was found in contempt of court and was sentenced to jail apparently until she agreed to testify. She did not, however, testify at trial, and the jury sent a question to the judge asking why Crissy Merrill did not testify. The record does not show how the court answered the question.

On September 17, 1984, petitioner was found guilty of first degree murder, although neither the pathologist nor the corner could testify whether the death was a suicide or a homicide. Petitioner was sentenced to a term of life imprisonment. On February 17, 1987, petitioner filed a motion pursuant to K.S.A. 60–1507 challenging his conviction. The motion was denied and the Kansas Court of Appeals affirmed. On April 12, 1988, petitioner filed a second motion pursuant to K.S.A. 60–1507 for the first time alleging ineffective assistance of trial counsel. This motion was also denied and the Kansas Court of Appeals again affirmed.

Petitioner filed this action seeking federal habeas relief on October 4, 1989.

*Discussion*

■ To establish his claim of ineffective assistance of counsel, petitioner must meet the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The two-part test set forth in *Strickland* requires (1) a show-

ing that counsel committed errors so serious that the defendant did not receive the counsel guaranteed by the Sixth Amendment, and (2) a showing that counsel's performance was so deficient that the defendant did not receive a fair trial. Under *Strickland*, the defendant bears the burden to establish both incompetence and prejudice, and there is a presumption that the attorney's conduct comes within "the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065.

Petitioner claims his attorney misunderstood the burden of proof and improperly stated that burden to the jury on voir dire and opening argument. On voir dire, counsel said: "It's up to Defendant to prove beyond a reasonable doubt that Mr. Yarrington is not guilty, and if we are able to convince you beyond a reasonable that this young man is innocent, would any of you have any reservation about finding him not guilty?" During his opening argument, counsel again stated: "We will attempt to prove to you the innocence of this defendant...."

■ The constitution guarantees every defendant the presumption of innocence. *Zygadlo v. Wainwright*, 720 F.2d 1221 (11th Cir.1983) cert. denied 466 U.S. 941, 104 S.Ct. 1921, 80 L.Ed.2d 468 (1984). This presumption remains with the defendant throughout every phase of the trial including the deliberations of the jury and is only extinguished when the jury has determined that the state has established defendant's guilt beyond a reasonable doubt. *Mahorney v. Wallman*, 917 F.2d 469 n. 2 (10th Cir.1990).

During closing argument, counsel correctly stated that the burden of proof was on the state, not on the defendant. Counsel said: "... the burden is on the State to prove to you beyond a reasonable doubt that this young man is guilty." Again during closing argument, counsel said: "The law places the burden upon the State to prove the defendant guilty. He's sitting there an innocent man until the State proves him guilty. The law does not require the defendant to prove his innocence."

In addition, the prosecutor stated the appropriate burden of proof on voir dire, opening argument and closing argument. The instructions to the jury properly included an instruction on the burden of proof and the beyond a reasonable doubt standard.

■ The question for analysis becomes then, whether counsel's misstatement of the law affirmatively negated petitioner's constitutional right to the presumption of innocence. *Mahorney*, at 473. Put another way, the question is "... whether, under the circumstances of petitioner's trial, the presumption was so undermined that the constitutional protection ordinarily afforded thereunder was effectively denied." *Mahorney*, at 473.

Although it is difficult for the court to understand how counsel could have misstated the burden of proof during voir dire and opening argument, in this instance such misstatements do not seem to have been fatal to petitioner's cause nor to counsel's effectiveness.

First, as it effects petitioner's cause, the court cannot conclude that petitioner's constitutional protection was effectively denied. Although, counsel made two misstatements, he also stated the burden and presumption correctly twice during closing argument. Additionally, the prosecution, during argument, and the trial judge, during instructions, correctly placed the burden of proof on the state and properly stated the presumption of innocence.

Second, as this error applies to counsel's effectiveness, the error does not rise to the level envisioned by the *Strickland* test. The record does not show that petitioner was denied the counsel guaranteed by the Sixth Amendment nor that but for this error the outcome would have been different.

■ Petitioner's next claim of ineffectiveness of counsel is that voir dire was improperly conducted and that witnesses were improperly examined and cross-examined. The record, however, shows that although counsel did not spend a great deal of time questioning jurors on voir dire, he

did ask pertinent questions. That he relied on rather extensive questioning of the prosecutor does not establish reversible error. Similarly, the extent of examination and cross-examination of witnesses is an area of trial tactics left to the discretion of counsel. While the record shows counsel could have perhaps been more vigorous eliciting certain testimony, petitioner has failed to show errors of the magnitude to invoke reversal under *Strickland.*

 Finally, petitioner claims counsel did not properly object to the introduction of hearsay testimony. In particular, petitioner claims hearsay testimony attributed to Crissy Merrill, who had invoked the protection of the Fifth Amendment provision against self-incrimination, violated his right to confront the witnesses against him. Counsel did fail to object on several occasions to statements made by witnesses and attributed to Crissy. On at least two occasions, counsel also failed to object to out-of-court statements made by individuals other than the witness.

The two protections afforded by the Confrontation Clause are the right to physically face those who testify against you and the right to conduct cross-examination. *Pennsylvania v. Ritchie,* 480 U.S. 39, 51, 107 S.Ct. 989, 998, 94 L.Ed.2d 40 (1987). If a hearsay declarant is present at trial and is subject to cross-examination, the jury then has an opportunity to observe the declarant's demeanor and no violation of the Confrontation Clause occurs. *U.S. v. Owens,* 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988).

Here, Crissy Merrill was never before the jury and petitioner never had the opportunity to confront her or cross-examine her statements. Although counsel did not object to certain statements attributed to Crissy, the record reveals on several occasions counsel carefully and thoroughly questioned the testifying witnesses. Counsel also objected to the admission of out-of-court writings attributed to Crissy.

Certainly objections to hearsay testimony would have been proper, but failure to object does not necessarily lead to the conclusion that petitioner was not afforded the

counsel guaranteed by the Sixth Amendment and that but for these errors the outcome of the proceedings would have been different. Failure to object is not necessarily a sign of incompetence, but often a matter of strategy or trial tactics.

Although this case is troubling because petitioner was convicted on circumstantial evidence and a principal witness invoked the protection of the Fifth Amendment against self-incrimination, the court finds that petitioner has not met the *Strickland* test for ineffective assistance of counsel.

IT IS THEREFORE ORDERED the petition for writ of habeas corpus is denied.