No. 68,600

STATE OF KANSAS, *Appellee*, v. WATSON KEVIN BRADFORD, *Appellant*.

(864 P.2d 680)

Opinion filed December 10, 1993.

*Stephen C. Moss*, assistant appellate defender, argued the cause, and *B. Kay Huff*, assistant appellate defender, and *Jessica Kunen*, chief appellate defender, were on the brief for appellant.

*Frank E. Kohl*, county attorney, argued the cause, and *Robert T. Stephan*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This felony-murder case concerns the sufficiency of the evidence supporting a conviction of attempted aggravated robbery as the underlying felony and whether the trial court abused its discretion in denying defendant's motion for a mistrial.

Watson Kevin Bradford appeals his convictions of felony murder (K.S.A. 1992 Supp. 21-3401[a][1]) and attempted aggravated robbery (K.S.A. 1992 Supp. 21-3301 and K.S.A. 21-3427). He asserts that the State failed to prove the underlying felony to establish the corpus delicti for felony murder. Bradford's mistrial motion was based on asserted prejudice resulting from buttons depicting the victim's photo being worn in the courtroom by the victim's family and the appearance of a defense witness who was escorted to court from the jail wearing chains. We have jurisdiction under K.S.A. 1992 Supp. 22-3601(b)(1) (direct appeal where a defendant is convicted of a class A felony or if a maximum sentence of life imprisonment is imposed). We find no error and affirm.

## Facts

The police responded to a 4:00 a.m. call and found Angela Conard's body lying outside the rear door of the Lansing Pizza Hut where she was employed. Sergeant Smith, who investigated the scene, saw a bloodstain approximately 25 feet north of the back door in the parking lot and scuff marks on the ground. Bradford and the State agree that these scuff marks were consistent with the body being dragged back from the parking lot to the rear door.

Sergeant Smith observed a large amount of blood on the floor inside the Pizza Hut, creating a path to the back door. A stack of bills and two money bags were on the cash register. Angela's purse and car keys were nearby. All doors and windows were secure. No signs of tampering were visible. The back door, which locked automatically, could be opened from the inside by pushing a "panic bar." Clothing, fingerprints, blood samples, an ice pick, and the money were gathered as evidence at the crime scene and sent to the KBI for analysis. None of the fingerprints were identified as Bradford's.

An autopsy was conducted by a forensic pathologist. He determined that death was caused by a gunshot wound to the chest.

Additional gunshot wounds were identified in Angela's right arm, chest, buttock, thigh, and left heel. Angela's jaw was fractured.

The State explains that Angela's duties included accounting for and securing the day's receipts. Although Bradford was not employed at the Pizza Hut, he had worked there with Angela between 1988 and 1990. A Pizza Hut employee testified that on two occasions Bradford phoned to order a pizza and began cussing the employee. Angela intercepted the call. Angela told Bradford to quit harassing the employees. According to the employee, Bradford made a harassing call on August 16, three days before Angela's death.

Bradford's father testified that his .22 caliber RG pistol was stolen from the family home in Lansing between August 14 and August 20, 1990, while the family was on vacation. Bradford no longer lived with his father and did not accompany the family on vacation. The pistol and ammunition were the only items taken. Valuables such as money and electronic equipment were not disturbed. Bradford's father told the officer who investigated the burglary that the family members, including Bradford, knew where the pistol was kept and that he believed his son had taken the pistol. At trial, the father testified that he had never spoken to the investigating officers, nor had he voiced speculations to the police concerning the weapon. He testified that only his wife knew where the pistol was kept.

A Kansas Bureau of Investigation firearms examiner explained that the bullets recovered from Angela's body were bullets which would be fired from a .22 caliber weapon. He stated that the manner in which the bullets were damaged was "typical of what we see with R.G.'s." The examiner conceded that a number of other weapon models could not be eliminated as the murder weapon. The State never produced the actual murder weapon.

Bradford was arrested and charged with felony murder and attempted aggravated robbery. At trial, the State introduced Bradford's extrajudicial admissions, including a statement given to the police by Tammy Thompson, Bradford's girlfriend. Tammy described Bradford's confession to the murder and attempted robbery. Tammy recanted the statement at trial. She testified that she had related "gossip," giving the police "what they wanted to hear" in the original statement. Tammy explained that she did

so because the police had threatened her, telling her that she "would lose everything, including [her] kids." She said the police had contacted her on several occasions and at odd hours. According to Tammy, Officer Lincoln became her "constant companion."

The State introduced Tammy's three-page signed statement of her police interview, transcribed from the tape recording. Tammy testified that the last two pages were blank when she signed them. The Lansing Chief of Police admitted that Tammy could possibly have signed blank pages but explained that he did not believe that blank page signing had occurred.

The State also called two jailhouse informants to testify. Both of the informants provided a detailed account of Bradford's confession. The content of each statement is essentially the same. Informant Brown testified that Bradford stated he had gone to the Pizza Hut to commit a robbery and had killed Angela. Bradford's admission to Brown occurred in July 1991. Brown did not give a statement to the police until December 1991. Brown testified, however, that he notified the jailer in July. Bradford says that the jailer did not corroborate Brown's claim. Brown was released from jail the day he gave the police his statement. He testified that he was not released because of the statement and that he had never been threatened or promised anything in return for the statement.

Bradford also confessed in a conversation in June 1991 with his cellmate, Todd Gardner. Gardner had been charged with second-degree murder. He was acquitted. After his acquittal, Gardner's attorney contacted the prosecutor in the case at bar. Gardner personally spoke with the prosecutor on the Sunday and Monday before Bradford's trial. Gardner explained that he came forward with Bradford's confession because a woman with kids had been shot. Bradford countered with his testimony that he did not kill Angela and did not know why jail inmates testified that he had confessed to the crime.

Timothy Wright, a cellmate of Bradford's at the Leavenworth County Jail, testified for the defense. Before the direct examination began, defense counsel approached the bench and moved for a mistrial based on the fact that Wright had been escorted into the courtroom in leg and hand chains. Counsel argued that

it "makes [Wright] look heinous to be paraded in front of the jury in chains." The trial court, in denying the motion, explained that the "[o]rdinary method of transporting [was] in leg and belly chains. I had no request he be transported in any other manner. If you wish to have his chains removed, we can have them removed now." Defense counsel replied: "A little bit after the fact, Your Honor."

Wright testified that while he has in jail an officer approached him about making a statement against Bradford. According to Wright, the officer promised that if Wright gave a statement he would either receive a reduced sentence or the charges against him would be dropped. Wright stated that he had heard rumors that other inmates had been promised concessions in exchange for their testimony.

Defense counsel also moved for a mistrial based on the fact that Angela's family had been wearing buttons in the courtroom containing Angela's photograph. The trial court denied the motion and directed court personnel to advise those persons wearing the buttons to remove them during further court proceedings.

## Corpus Delicti—Bradford's Contentions

Bradford asserts that he was convicted by his own extrajudicial confession. He maintains that his confession was not corroborated by any independent evidence that either placed him at the scene of the crime or showed that he attempted a robbery. He reasons that the State failed to prove (1) the corpus delicti of felony murder and (2) his guilt beyond a reasonable doubt.

Bradford indicates that we have held that the corpus delicti cannot be established by the unsupported extrajudicial confession of a defendant, citing *State v. Yarrington*, 238 Kan. 141, 146, 708 P.2d 524 (1985). He recognizes that our opinions have held that the corpus delicti in a homicide case is established by proof of two facts: that a person was killed and that another individual did the killing. Bradford observes, however, that those opinions have addressed the corpus delicti question in the intentional murder context. Bradford contends that when a defendant is charged with felony murder, proving the corpus delicti requires proof of the underlying felony. He discusses *Gribble v. State*, 808 S.W.2d 65, 71 (Tex. Crim. 1990), *cert. denied* 111 S. Ct. 2856 (1991),

where the court held that an extrajudicial confession must be corroborated as to the underlying felony. Bradford acknowledges that Angela's death is undisputed. He believes, however, that no tangible evidence supported the finding that an attempted robbery occurred. He emphasizes that large amounts of cash remained in the restaurant, the building was locked, there were no signs of forcible entry, and there was neither evidence of a struggle nor evidence that Angela attacked her assailant, suggesting she knew her assailant.

Bradford argues that the statements concerning his alleged confessions were so untrustworthy that we should carefully scrutinize the independent, corroborative proof. He emphasizes that the State failed to produce or prove: (1) fingerprints; (2) a murder weapon; (3) his presence in the vicinity of the crime; (4) any suspicious behavior which could connect him to the crime; (5) witnesses who could corroborate the description of the crime; and (6) any fruits of the crime.

Bradford contends that aside from the confessions, no evidence corroborated the attempted robbery; consequently, the State failed to prove the corpus delicti of the underlying offense which supported the felony-murder charge. In the alternative, Bradford claims that the confessions produced by the State were so untrustworthy that no rational jury could have convicted him.

According to Bradford, there are two problems with the credibility of Tammy's statement. First, Tammy swore under oath at trial that her original statement to the police was false. Second, Tammy testified that she had been coerced into giving the statement, rendering her statement untrustworthy. Bradford believes the jailhouse informants' statements lacked credibility. He maintains that a jury could not have found him guilty beyond a reasonable doubt based on the dubious reliability of the statements which recounted his confession.

### Corpus Delicti—The State's Contentions

The State responds with a description of the facts which support the corpus delicti of the murder and of the attempted robbery: Angela was dead; her death was by force and not as a result of accident, suicide, or natural causes; she was attacked after hours in her workplace by an armed intruder; she had a large amount

of money available at the scene; she was forcibly subdued, i.e., shot and killed while attempting to flee; and someone returned her body to the rear door and was locked out.

### Corpus Delicti—Discussion

We recently revisited the corpus delicti issue in *State v. Grissom*, 251 Kan. 851, 840 P.2d 1142 (1992). "It has long been the rule of this court that a conviction of even the gravest offense may be sustained by circumstantial evidence." *State v. Hupp*, 248 Kan. 644, Syl. ¶ 5, 809 P.2d 1207 (1991). There was sufficient evidence to establish that Angela was killed and that the killing was done by another person. The Texas Court of Criminal Appeals in *Gribble* reasoned that in order for the corpus delicti to be established,

"the extrajudicial confession of a criminal defendant must be corroborated by other evidence tending to show that a crime was committed. [Citations omitted.] It need not be corroborated as to the person who committed it, since identity of the perpetrator is not a part of the corpus delicti and may be established by an extrajudicial confession alone." 808 S.W.2d at 70.

The court in *Gribble* agreed "that the corpus delicti of capital murder includes more than merely homicide by a criminal agency. In the present context, we hold that evidence independent of appellant's confession was required to show that his victim had been kidnapped." 808 S.W.2d at 71. However, the Texas court went on to explain that

"[s]uch evidence need not, however, be sufficient by itself to prove the offense of kidnapping. [Citations omitted.]. . . [T]he quantum of independent evidence necessary to corroborate the corpus delicti in a criminal prosecution relying upon the extrajudicial confession of an accused need not be great. [Citation omitted.] So long as there is some evidence which renders the corpus delicti more probable than it would be without the evidence, we believe that the essential purposes of the rule have been served. [Citations omitted.]" 808 S.W.2d at 71-72.

We agree with the *Gribble* analysis of the relationship of the corpus delicti and the underlying felony in a felony-murder case.

The evidence at the crime scene in the case at bar independently established the corpus delicti of attempted aggravated robbery. Proof of the corpus delicti does not require the State to prove by evidence independent of Bradford's confession that the attempted robbery was committed by Bradford. The State merely

needs to corroborate the fact that, given the evidence, it is more probable than not that Angela was killed during the course of an attempted robbery. Sufficient corroborating proof that satisfies this burden is present in the case at bar. Angela was attacked at a time when she was routinely alone dealing with the day's receipts. Her purse and keys were on the counter near the money, which could be a sign that she was ready to leave to deposit the money in the bank. The robbery did not need to be completed to support the attempt. The blood spattered in the restaurant indicated foul play. The scuff marks outside the restaurant are consistent with the State's view that Angela left the Pizza Hut, fell in the parking lot, and someone dragged her body back to the door. Reentry was attempted, but the door was locked.

## Sufficiency of Evidence

The standard of review on the sufficiency of the evidence issue is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, we are convinced that a rational factfinder could have found Bradford guilty beyond a reasonable doubt. See *State v. Richmond*, 250 Kan. 375, Syl. ¶ 4, 827 P.2d 743 (1992).

The jury found Bradford guilty of both felony murder and the underlying crime of attempted aggravated robbery. The jury had an opportunity to evaluate the evidence and testimony of the witnesses. The trial court also had an opportunity to assess whether the jury's decision was supported by the evidence when it denied Bradford's motion for a new trial. Credibility of witnesses is an issue for the jury, not for the trial judge or the appellate courts. *State v. Jarmon*, 245 Kan. 634, 638, 783 P.2d 1267 (1989).

"An attempt is any overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime." K.S.A. 1992 Supp. 21-3301(a). "The determination of the existence of an overt act is a jury function." *State v. Chism*, 243 Kan. 484, 490, 759 P.2d 105 (1988).

"Aggravated robbery is a robbery committed by a person who is armed with a dangerous weapon or who inflicts bodily harm upon any person in the course of such robbery." K.S.A. 21-3427.

"Robbery is the taking of property from the person or presence of another by threat of bodily harm to his person or the person of another or by force." K.S.A. 21-3426.

When viewed in the light most favorable to the prosecution, the record contains evidence upon which the jury could have relied in reaching its decision. Testimony regarding Bradford's confessions could properly be considered to establish that Bradford committed the crimes. All of the witnesses described the events to which Bradford confessed in a similar fashion, with only minor differences. The jury could have determined Bradford's guilt based on this similarity. Bradford had an opportunity to present evidence which supported his theory. Although the credibility of the State's witnesses was brought into question, the jury obviously believed the State's witnesses and its theory rather than the evidence presented in Bradford's behalf. Bradford's attack on witness credibility repeats the arguments he unsuccessfully made to the jury. Bradford is essentially arguing that the evidence was insufficient to support the verdict. We do not agree.

### Bradford's Mistrial Motion

Bradford asserts abuse of discretion in the trial court's failure to grant mistrial motions because of the buttons containing Angela's picture and Wright's courtroom appearance in chains. The declaration of a mistrial is a matter entrusted to the trial court's discretion. The standard of review is abuse of discretion. The test of whether the trial court abused its discretion is whether no reasonable person would agree with the trial court. *State v. Griffin*, 246 Kan. 320, 326, 787 P.2d 701 (1990). Bradford carries the burden of showing that such abuse, if present, requires reversal. See *State v. Walker*, 244 Kan. 275, 279-80, 768 P.2d 290 (1989). A judge's power to declare a mistrial is to be used with great caution, under proper circumstances, to insure that all parties receive a fair trial. *State v. Chandler*, 252 Kan. 797, Syl. ¶ 2, 850 P.2d 803 (1993).

Bradford claims that the family's purpose in wearing the buttons was to guarantee that he would be convicted. He asserts that such courtroom demonstrations which are designed to influence the administration of justice "are antithetical to due process." He discusses *Norris v. Risley*, 878 F.2d 1178 (9th Cir. 1989), in which

the petitioner alleged that the presence of women spectators from a rape task force who wore "Women Against Rape" buttons deprived him of a fair trial. The *Norris* court noted that a reasonable inference was that the women were attempting to press for a conviction. The court reasoned that demonstrations designed to influence the outcome in a courtroom are impermissible. The case was remanded for an evidentiary hearing to determine whether the circumstances surrounding the buttons were prejudicial. 878 F.2d at 1183.

Bradford believes that the trial court, in the case at bar, should have ordered the spectators to remove their buttons at an earlier time in the proceeding. He reasons that the court had a clear view of the spectators and had an obligation to help guarantee a fair trial. He explains that defense counsel had his back to the spectators and, consequently, could not move for the mistrial until he had seen a button during recess. Bradford asserts that the family's show of support, which was not subject to cross-examination, indicated that he was guilty and prejudiced the outcome of his trial.

The trial court ordered the buttons removed when the matter was brought to its attention. Bradford has failed to provide evidence that any of the jurors saw or were influenced by the buttons. The button incident is controlled by *State v. McNaught,* 238 Kan. 567, 713 P.2d 457 (1986), in which spectators at trial wore Mothers Against Drunk Driving (MADD) and Students Against Drunk Driving (SADD) buttons. McNaught failed to show that he was prejudiced by the wearing of the buttons. We could not, as a matter of law, say that the trial court abused its discretion in refusing to require the spectators to remove the buttons. 238 Kan. at 580-81.

Additionally, Bradford reasons that when a defendant is tried in prison attire, "an unacceptable risk is presented of impermissible factors coming into play," quoting *Estelle v. Williams,* 425 U.S. 501, 505, 48 L. Ed. 2d 126, 96 S. Ct. 1691 (1976). He asserts that the jury's viewing a defendant in handcuffs violates the right to a fair trial, citing *U. S. v. Halliburton,* 870 F.2d 557 (9th Cir.), *cert. denied* 492 U.S. 910 (1989). Bradford believes that the same principles apply with equal force to the situation in the instant case where Wright, a defense witness, appeared

at trial in chains. He claims that the chains could have caused jurors to base their credibility conclusions on unacceptable factors. Bradford asserts that the trial court's failure to grant a mistrial on either of the described grounds was error. We do not agree.

Bradford called Wright to testify concerning events that allegedly occurred while he and Wright were incarcerated. Bradford did not request that either the jail chains or jail garb be removed. Wright's courtroom appearance was controlled by Bradford, not by the State. Bradford exposed the fact that Wright had been in jail. The trial court offered to have the chains removed when Wright's appearance was first brought to the court's attention. We find no abuse of discretion.

Affirmed.