No. 89,105

In the Matter of DAVID MCLANE BRYAN, *Respondent*.

61 P.3d 641

Opinion filed January 24, 2003.

*Stanton A. Hazlett*, disciplinary administrator, argued the cause and was on the brief for petitioner.

*Michael D. Hufft*, of Hufft & Maginn, P.C., Kansas City, argued the cause and was on the brief for respondent, and *David M. Bryan*, respondent, argued the cause pro se.

*Per Curiam*: On October 15, 1999, a complaint was filed on behalf of Helene Eichenwald with both the Kansas and Missouri Disciplinary Administrators against David Bryan. The Kansas Disciplinary Administrator filed a formal complaint against Bryan on May 16, 2000. Bryan filed an answer to the complaint in June 2000.

The Disciplinary Administrator filed an amended complaint on October 12, 2000. The amended complaint alleged that Bryan violated *Kansas Rules of Professional Conduct* (KRPC) 1.6 (2002 Kan. Ct. R. Annot. 358) (confidentiality of information); 1.7 (2002 Kan. Ct. R. Annot. 361) (conflict of interest); 1.9 (2002 Kan. Ct. R. Annot. 370) (conflict of interest; former client); 1.16 (2002 Kan. Ct. R. Annot. 395) (declining or terminating representation); 4.4 (2002 Kan. Ct. R. Annot. 430) (respect for rights of third persons); and 8.4 (2002 Kan. Ct. R. Annot. 449) (misconduct).

Bryan filed a motion for summary judgment and a memorandum in support of the motion in February 2002. The Disciplinary Administrator responded by requesting that the motion be stricken from the record and that the Disciplinary Administrator's office not be required to respond to the motion. Bryan replied, arguing against the Disciplinary Administrator's requests.

At the March 19, 2002, hearing before the three-member panel of the Kansas Board for Discipline of Attorneys, there were no objections to the notice of the hearing; to the date, time, or place of the hearing; to the composition of the panel; or to the jurisdic-

tion of the panel. The hearing panel reserved ruling on Bryan's motion for summary judgment. The parties stipulated to facts, which included Bryan's stipulation to a violation of KRPC 1.7(b). Exhibits were also received into evidence by the hearing panel from both parties without objection.

The hearing panel, after hearing the arguments of the parties and after reviewing the stipulated facts and the exhibits admitted into evidence, made the following findings of fact:

"1.   David M. Bryan (hereinafter 'the Respondent') is an attorney at law, Kansas Attorney Registration No. 17585. The Respondent's last registration address with the Clerk of the Appellate Courts of Kansas is . . . Overland Park, Kansas . . . . In October, 1995, the Respondent was admitted to the practice of law in the state of Missouri. Thereafter, on May 21, 1996, the Respondent was admitted to the practice of law in the state of Kansas.

"2.   In 1991 or early 1992, Helene Eichenwald, Marla Worthington, and Ms. Fuller, employees of Krigel's, Inc. in Kansas City, Missouri, retained attorney Stephen Bradley Small to represent them in employment discrimination cases based upon sexual harassment.

"3.   In January, 1994, Ms. Eichenwald, Ms. Worthington, and Ms. Fuller terminated Mr. Small. Thereafter, they retained the law firm of McAnany, Van Cleave & Phillips to represent them in their sexual harassment case against Krigel's, Inc. After retaining the McAnany firm, the plaintiffs were made aware that a problem had arisen with the statute of limitations on the plaintiffs' supplemental state law claims.

"4.   The Respondent met Ms. Eichenwald in July, 1994. At the time, the Respondent was a second year law student at the University of Missouri Kansas City, School of Law. Also at that time, the Respondent served as a law clerk for attorney Barry R. Grissom. The Respondent suggested to Ms. Eichenwald that she and the other plaintiffs in the sexual harassment case meet with Mr. Grissom to discuss the possibility of a legal malpractice action against Mr. Small.

"5.   In December, 1994, Ms. Eichenwald, Ms. Worthington, and Ms. Fuller retained Mr. Grissom to pursue a legal malpractice action against Mr. Small.

"6.   In September, 1995, Ms. Eichenwald's lawsuit against Mr. Small was filed in the United States District Court for the District of Kansas. The Respondent assisted Mr. Grissom with Ms. Eichenwald's case in the capacity of a law clerk.

"7.   Meanwhile, Ms. Eichenwald, Ms. Worthington, and Ms. Fuller continued to pursue their Title VII sexual harassment claims against Krigel's, Inc. Eventually, on October 12, 1995, the case was settled and Ms. Eichenwald prevailed.

"8.   After his admission to the Missouri bar in October, 1995, the Respondent continued to work on Ms. Eichenwald's legal malpractice case. At the same time, the Respondent and Ms. Eichenwald began a romantic relationship. The relationship between the Respondent and Ms. Eichenwald escalated into a sexual

relationship in July, 1996. Although Mr. Grissom remained as counsel for Ms. Eichenwald, during their personal relationship, the Respondent was also actively involved in representing Ms. Eichenwald.

"9. In August, 1996, Ms. Eichenwald told the Respondent that she was going to marry an individual named John Opel. At that time, the sexual relationship between the Respondent and Ms. Eichenwald ceased, but the two continued to see one another on numerous occasions. In December, 1996, the Respondent learned that the engagement between Ms. Eichenwald and John Opel had been broken. In January, 1997, the Respondent and Ms. Eichenwald resumed their sexual relationship.

"10. In March, 1997, the Respondent learned that Ms. Eichenwald was still seeing John Opel. The sexual relationship between the Respondent and Ms. Eichenwald ended, but the Respondent and Ms. Eichenwald still continued to see one another. The Respondent continued to pursue Ms. Eichenwald romantically. In conversations and letters, the Respondent expressed a desire to have a relationship with Ms. Eichenwald. At the time, the Respondent was still one of the attorneys representing Ms. Eichenwald in her lawsuit against Mr. Small.

"11. In the fall of 1997, the Respondent and Ms. Eichenwald resumed their romantic relationship. In November, 1997, Ms. Eichenwald determined that she wanted the Respondent to be her sole counsel. In conversations and letters from November, 1997, to February, 1998, the Respondent expressed his feelings for Ms. Eichenwald and his jealousy of John Opel. At those times, the Respondent was Ms. Eichenwald's sole counsel in her case against Mr. Small.

"12. On or about February 21, 1998, the Respondent learned that Ms. Eichenwald was once again seeing John Opel.

"13. Because the Respondent resented the fact that Ms. Eichenwald was again seeing Mr. Opel, on February 25, 1998, the Respondent sent Ms. Eichenwald a letter terminating his representation of her. The letter contained allegations of theft and fraud. The tone of the letter was unprofessional, rude, and written to embarrass Ms. Eichenwald. Pertinent sections of the letter are set forth below:

'. . . Frankly, I no longer believe any of the allegations you are making in this case, or those you have made in any of your other cases. During the course of this long litigation several things have arisen which have a direct bearing on your truthfulness as a person. I can no longer ignore or rationalize them. Among them are:

'Your termination from Sacks Fifth Avenue. As you remember, I investigated this incident at your request. It was then, and still is, obvious that you intentionally attempted to deceitfully manipulate the Saks' return policy for your own financial gain. This is theft, no doubt brought on by what I perceive to be an ever-present belief on your part that you will never get caught because you are far too clever for everyone else. You are not.

'Also, there is the matter of your illegal and fraudulent acquisition of unemployment benefits during the time you were actually employed as a

nanny by the Shimshaks. This is a crime, punishable by restitution, fines and even jail time. At that time you were obtaining these benefits, you could not possibly have thought this was legal. This was only brought to my attention before your deposition, when you figured out that defense counsel might possibly find out and use this against you. Only then, and upon my demand, did you cease this fraud upon the state.

'These things, as well as the fact that I have personally witnessed you display a constant repeating pattern of deception during the course of this litigation toward virtually everyone you know, compel me to believe that your allegations of sexual harassment and for the supposed damage you sustained therefrom are all complete fabrications, invested [*sic*] for your financial gain. During the more than three years I represented you, I have defended your honesty countless times in social gatherings when others who knew you attempted to enlighten me about your propensity for lying. Now I am forced to accept the fact that I was wrong about you, and everyone else was right. It is impossible for me to represent you when faced with the fact that I actually agree with your opponent Mr. Small that you are a "horribly untruthful person." '

The Respondent included the following paragraph as a footnote to the letter:

'I would be allowed to make public this letter, and anything else I know about your character, under either of two circumstances. First, I could use it as a defense in the event that you sued me, second, as a defense if you made a complaint to the Disciplinary Council. In either case, it would become a matter of public record, which could be used against you in any other action in which it was determined to be relevant evidence. Although I have done nothing to warrant either of these actions, I will not be surprised to see either one, given your track record in these areas.'

"14. After the Respondent terminated his representation of Ms. Eichenwald, it was necessary for her to obtain new counsel. She again retained Mr. Grissom and Mr. Grissom assumed sole responsibility for representing Ms. Eichenwald in the malpractice case against Mr. Small. The Respondent continued to represent Ms. Worthington and Ms. Fuller.

"15. In April, 1999, by court order Ms. Eichenwald's malpractice case was consolidated with Ms. Worthington's case. The court further ordered a compulsory and shared settlement conference with magistrate Sarah Hays.

"16. On May 2, 1999, the Respondent visited Ms. Eichenwald at her place of employment, Nordstrom, Inc., and explained that they were both ordered by the court to appear at the settlement conference. From February 25, 1998 until May 2, 1999, there had been no contact of any kind between the Respondent and Ms. Eichenwald.

"17. During the spring and summer, 1999, the Respondent made numerous shopping visits to Nordstrom, but did not contact Ms. Eichenwald.

"18. On September 9, 1999, Ms. Eichenwald sent the Respondent a letter asking him not to come to Nordstrom anymore because it made her uncomfortable. A copy of Ms. Eichenwald's letter was sent to the Nordstrom store manager and the Nordstrom security manager.

"19. On September 10, 1999, the Respondent learned that Ms. Eichenwald had told others that the Respondent was stalking her, that he was dangerous, and that he was in need of mental health care.

"20. Also on September 10, 1999, the Respondent sent a letter to Mr. Grissom, and included the following paragraphs:

'The point of this letter is to tell you that I may have to defend myself against your client's accusations by making public certain things I know about her which will damage her credibility in the extreme. I have never discussed them with you, or Rachelle, because I was trying to get out of representing her without needlessly hurting her sister's feelings or damaging Helene's reputation, but I can't do that now. I fired your client in March of 1998, but I never told you why. Attached is the termination letter from my office to your client, explaining the reasons why I felt I had to fire Helene. There are other good reasons which I did not put in the letter, but also are extremely damaging to her credibility and admissible in court. If I have to respond to any allegations made against me by Helene, the things in that letter are going to have to go public, which means they will be in the possession of the attorneys for Stephen Small. . . .  I can't think of any reason why I shouldn't sue Helene for defamation and put a stop to this, except that her case and Marla Worthington's are consolidated and that might hurt my client too. That's the problem.

'You need to tell Helene to shut her mouth, because if she doesn't she's going to destroy her own case against Steve Small, and maybe Marla Worthington's case too. I will, of course, move the court to "unconsolidate" the cases based upon this conflict, and I will then explain to the Court and Jay Barton that Ms. Eichenwald has now accused me of stalking her at her place of employment. This will immediately tip the other side that something good is there for Steve Small, and I can be deposed about it since I was not her counsel at the time of the incident.'

"21. On September 11, 1999, the Respondent wrote a letter to Nordstrom store manager Kris Allen and Nordstrom Loss Prevention Manager Jennifer Knipp stating, among other things, the following:

'Additionally, I happen to know that Ms. Eichenwald has a history of making false claims such as those she is making against me, and this will all come out in court. During the seven years that I have known Ms. Eichenwald, there has rarely been a period of time when she didn't claim that someone was after her, following her, or stalking her. One particularly telling example of this trait is a police report Ms. Eichenwald filed with the Prairie Village

Police Department in 1996. In this police report, Ms. Eichenwald seriously claimed that while she was away from home, some man must have stood at her front door and masturbated on her front door window, in front of passing traffic and four feet off the ground. The police officer and I both tried to tell her that this was impossible and ridiculous, but she insisted that this was what happened. Claims like these make Ms. Eichenwald feel important because they increase concern for her among others, and get her more attention. Ms. Eichenwald likes that very much, and does whatever she can to insure it continues. Believe me, there is not now, nor has there ever been, anyone stalking or harassing Ms. Eichenwald.'

"22. On September 13, 1999, the Respondent sent a letter to Ms. Eichenwald. In the letter the Respondent acknowledged that Ms. Eichenwald had made allegations that the Respondent was stalking her and that she was in fear for her safety. The Respondent demanded that Ms. Eichenwald retract these allegations. The threatened consequences of failing to retract these statements were set out in that letter by the Respondent as follows:

'When I fired you as my client in February of 1998, I told you why I was firing you and warned you that my February 25, 1999 letter could become public if you made any accusations against me. In spite of this clear warning, you have been unable to control yourself. I am no longer going to quietly sit back and let you ruin my reputation. Now, only two things can happen. You will write a retraction of the allegations you have recently made against me and telling everybody that it was all a big mistake and an overreaction by you. You will send it to all those to whom you have made any defamatory allegations.

'If you do not send these written retractions, I have no choice but to file a lawsuit against you for defamation. When I file this lawsuit against you, several things will happen. First, all the allegations in the petition will become public record and in the possession of the attorneys for Mr. Small. I have checked all the ethical rules, and because of your allegations against me I am now entitled to release the February 1999 termination letter I sent you. This too, will come into the possession of Mr. Small's attorneys who will make ample use of it to destroy your credibility. . . .'

"23. Ms. Eichenwald, in a note sent via facsimile, informed the Respondent that she was unable to retract her 'feelings.' She offered, though, to resolve the issues through mediation.

"24. On September 16, 1999, the Respondent wrote to Ms. Eichenwald refusing to submit the dispute to mediation and again demanding that she retract her allegations against him. Additionally, in that letter, the Respondent reiterated his position regarding his authority to release confidential information:

'As far as releasing any formerly privileged information to whomever might have a use for it, I am on firm legal footing. Kansas Rules of Professional Conduct 1.6(b)(2) states that:

"A lawyer may reveal such [privileged] information to the extent the lawyer reasonably believes necessary: . . . to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and client . . . .' "

"25. Ms. Eichenwald declined to retract her statements as requested by the Respondent. On September 27, 1999, the Respondent filed suit against Ms. Eichenwald in the District Court of Johnson County, Kansas, case number 99C12748, alleging defamation, invasion of privacy, and tortious interference with a business relationship.

"26. On September 29, 1999, the Respondent wrote a letter to counsel for Mr. Small. The letter confirmed a prior conversation between the Respondent and defense counsel, James Barton. In that conversation the Respondent offered to provide defense counsel with negative information regarding Ms. Eichenwald, if they could reach a settlement agreement regarding Bryan's two remaining clients in the malpractice litigation.

"27. On September 30, 1999, the Respondent self-reported his romantic and sexual relationship with Ms. Eichenwald to Stanton A. Hazlett, Disciplinary Administrator. In his letter, the Respondent denied that he engaged in misconduct and informed Mr. Hazlett that he expected Ms. Eichenwald to file a disciplinary complaint against him.

"28. On October 6, 1999, Lynne J. Bratcher filed a complaint with the Disciplinary Administrator. Thereafter, on November 1, 1999, the Respondent provided his written response to Ms. Bratcher's complaint. In addition to his complaint, the Respondent provided a large volume of personal information regarding Ms. Eichenwald that was unnecessary to respond to the complaint, including a copy of a petition to foreclose on Ms. Eichenwald's grandmother's house.

"29. In October, 1999, counsel for Mr. Small independently obtained a copy of plaintiff's Petition for Damages in *Bryan v. Eichenwald* and obtained negative information about Ms. Eichenwald disclosed by the Respondent in his petition. Counsel for Mr. Small later subpoenaed and deposed the Respondent and obtained additional negative information about Ms. Eichenwald by the Respondent. The Respondent was listed as a witness for Mr. Small in his defense against Ms. Eichenwald's malpractice claim. (The Respondent previously informed counsel for Mr. Small of the existence of *Bryan v. Eichenwald*.)

"30. On October 25, 1999, the Respondent filed a motion to sever Ms. Worthington's case from Ms. Eichenwald's case. Paragraphs 5 and 6 of that motion were as follows:

'5. Because of the allegations made in *Bryan v. Eichenwald*, Mr. Bryan may become a witness for defendant Stephen Bradley Small in his case against Ms. Eichenwald.

'6. . . . Any attack on Ms. Eichenwald's credibility could also unfairly influence the jury against Ms. Worthington.'

After counsel for Mr. Small objected to the Respondent's motion to sever, the Respondent, on November 8, 1999, filed a reply. That pleading contained the following assertions:

'3. Since the termination of Mr. Bryan's representation of Ms. Eichenwald in her case against her former counsel Mr. Small, Ms. Eichenwald has now been sued by her other former counsel, Mr. Bryan for making defamatory claims of stalking and threats against Mr. Bryan, claims very similar to those Ms. Eichenwald previously made against both Mr. Shine and Mr. Stein in the *Krigel's* case. Because Mr. Bryan is suing his former client, it remains to be determined what information Mr. Bryan will be allowed to use to prove his case against Ms. Eichenwald. A ruling of the Court in *Bryan v. Eichenwald* on this issue could have an adverse effect on Ms. Eichenwald's credibility. It is unfair and prejudicial to make Ms. Worthington suffer for any credibility problems that may arise for Ms. Eichenwald.

. . . .

'5. The stalking and harassment charges made by plaintiff Eichenwald against her former counsel, and plaintiff Worthington's current counsel Mr. Bryan, could become part of Mr. Small's defense in this case. Should this happen, plaintiff Worthington's case against Mr. Small would be unfairly prejudiced by the credibility problems Ms. Eichenwald may have.

. . . .

'7. It is unfair and prejudicial to Plaintiff Worthington's case to have it associated in any way with Ms. Eichenwald. Ms. Eichenwald does not appear on plaintiff Worthington's rule 26 disclosure statement filed with this Court on October 1, 1999, and plaintiff Worthington has never intended to use any testimony from Ms. Eichenwald to support her claims in this case. Plaintiff Worthington plans to file a Motion in Limine regarding Ms. Eichenwald. It is prejudicial and fundamentally unfair to plaintiff Worthington to have her claim rest on the credibility of Ms. Eichenwald.'

"31. Following a finding of probable cause against the Respondent, the case file in this disciplinary proceeding became public record pursuant to Kan. Sup. Ct. R. 222(d). Counsel for Mr. Small obtained a copy of the entire disciplinary file, including information relating to the representation of Ms. Eichenwald by the Respondent. (The Respondent previously informed counsel for Mr. Small of the disciplinary case.)

"32. In December, 1999, the Respondent discovered information that gave rise to a cause of action against Ms. Eichenwald's employer, Nordstrom, Inc., for negligent supervision of its employee, Ms. Eichenwald. The Respondent contacted Nordstrom's counsel and offered to forego a lawsuit against Nordstrom in exchange for Ms. Eichenwald's termination and a letter of apology. Nordstrom refused.

"33. In December, 1999, the Respondent voluntarily dismissed his lawsuit in the District Court of Johnson County, Kansas. Through counsel, the Respondent refiled his case in the United States District Court for the District of Kansas. This case was entitled *David M. Bryan v. Helene Eichenwald and Nordstrom, Inc.*, No. 99-2543-CM.

"34. Both Ms. Eichenwald and Nordstrom attempted to invoke claims of attorney-client privilege as to negative information about Ms. Eichenwald which the Respondent possessed. All parties submitted an agreed-upon Motion for Protective Order. The Court denied this motion and no protective order was ever entered.

"35. On June 24, 2000, the court in *Bryan v. Eichenwald, et al.*, issued an order in which it denied Ms. Eichenwald's attempt to invoke the attorney-client privilege and the rule of confidentiality as to negative information in the possession of the Respondent. The court ruled that such information could be properly disclosed by the Respondent to assert either a claim or defense regarding the allegations made against the Respondent by Ms. Eichenwald in the *Bryan v. Eichenwald* case.

"36. After a lengthy briefing of all issues, the court in *Bryan v. Eichenwald, et al.*, issued an order denying the motions for summary judgment filed by both Ms. Eichenwald and Nordstrom, Inc., stating in pertinent part, 'a reasonable fact finder could conclude that Nordstrom should have foreseen that plaintiff's reputation would be injured by such statements.'

"37. Following denial of defendants' motions for summary judgment the parties settled in the case. Ms. Eichenwald and Nordstrom paid the Respondent $16,000.00. Additionally, Ms. Eichenwald provided the Respondent with a written apology."

The hearing panel also made conclusions of law. The majority of the panel found that Bryan had violated KRPC 1.6(a), 1.7(b), 1.16(d), and 8.4(a). Panel member M. Warren McCamish dissented from some of the panel's findings and did not agree with the finding that Bryan violated KRPC 8.4(a). The hearing panel, after considering aggravating and mitigating factors, unanimously recommend published censure. Bryan took exception to the hearing panel's findings of fact and conclusions of law.

Bryan argues the hearing panel erred in (1) interpreting KRPC 1.6; (2) making findings of fact; and (3) refusing to consider Bryan's motion for summary judgment.

## KRPC 1.6

Interpretation of the Kansas Rules of Professional Conduct is a question of law over which this court has unlimited review. *State v. Dimaplas*, 267 Kan. 65, Syl. ¶ 1, 978 P.2d 891 (1999); *Baugh v. Baugh*, 25 Kan. App. 2d 871, 875, 973 P.2d 202 (1999).

KRPC 1.6 states:

"(a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraph (b).

"(b) A lawyer may reveal such information to the extent the lawyer reasonably believes necessary:

(1) To prevent the client from committing a crime; or

(2) to comply with requirements of law or orders of any tribunal; or

(3) *to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client*, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client." (Emphasis added.)

Bryan contends the hearing panel erred in interpreting KRPC 1.6 in the following ways: (1) in finding that in order for disclosures of confidential information to be appropriate under KRPC 1.6(b)(3), there must be a formal proceeding initiated; (2) in failing to find that Bryan's disclosures of information to Grissom and Nordstrom employees prior to filing suit against Eichenwald for defamation were reasonable under the circumstances; (3) in finding that Bryan was not authorized to reveal the fact he possessed negative information regarding Eichenwald's credibility and the existence of the defamation suit after it was filed; and (4) in finding that Bryan's duty to his former client outweighed his duty to his current client.

First, it is important to note that the panel made the following conclusions of law:

"1. The Disciplinary Administrator alleged that the Respondent violated KRPC 1.6. . . . The purpose behind KRPC 1.6 is to encourage clients to fully and frankly communicate with their lawyers, even when to do so is embarrassing or legally damaging. Kansas Comment to KRPC 1.6. 'The confidentiality rule applies not merely to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source. . . .' *Id.* Finally, '[t]he lawyer must make every effort practicable to avoid unnecessary disclosure of information relating to a representation.' *Id. See also Harris v. The Baltimore Sun Co.*, 330 Md. 595, 608, 625 A.2d 941 (1992) (Rule '1.6 should be read to prohibit to those needless revelations of client information that incur some risk of harm to the client.').

"2. In determining whether the Respondent violated KRPC 1.6(a), we must first look to see whether he revealed information relating to the representation of Ms. Eichenwald. An important aspect of this analysis is the meaning and scope of the word 'reveal.' While there appears to be no recognized legal definition of 'reveal,' Black's Law Dictionary, 5th Edition (1979) defines 'disclose' and 'disclosure.' 'Disclose' is defined as '[t]o bring into view by uncovering; to expose; to make known; to lay bare; to reveal to knowledge; to free from secrecy or ignorance, or make known.' *Id.*, p. 417. 'Disclosure' is defined as '[r]elevation; the impartation of that which is secret or not fully understood.' *Id.*

"3. If it is determined that the Respondent revealed information relating to the representation of Ms. Eichenwald, then we must look to see whether the Respondent's conduct falls within one of the exceptions found at KRPC 1.6(b)(3). . . . Each of the three instances where disclosure is permitted by KRPC 1.6(b)(3), requires that the disclosure be made in some type of legal forum: to establish a claim, to establish a defense, or to respond to allegations in any proceeding. *Id.* The rule does not permit disclosure of information relating to the representation in any other setting.

"4. In this case, there appear to be five instances where the Respondent may have revealed information relating to the representation of Ms. Eichenwald: (a) letter of September 10, 1999, to Mr. Grissom, (b) letter of September 11, 1999, to Kris Allen and Jennifer Knipp, (c) telephone conversation with James P. Barton, Jr. shortly before September 29, 1999, (d) motion to sever, filed October 25, 1999, and (e) reply, filed November 8, 1999. In order to determine whether the Respondent violated KRPC 1.6, the facts involved in each disclosure must be closely examined.

### "Letter of September 10, 1999, to Mr. Grissom

"5. On September 10, 1999, the Respondent wrote Mr. Grissom, counsel for Ms. Eichenwald, a letter threatening to publicly reveal damaging information regarding Ms. Eichenwald. Enclosed with this letter, was a copy of the Respondent's February 25, 1998, letter to Ms. Eichenwald. In the Respondent's February 25, 1998, letter, the Respondent accused Ms. Eichenwald of theft, fraud, and untruthfulness. While the Kansas Rules of Professional Conduct required the

Respondent to make every effort to avoid revealing information relating to the representation of a client, the Respondent voluntarily did the opposite. By providing Mr. Grissom with the February 25, 1998, letter to Ms. Eichenwald with his September 10, 1999, letter, the Respondent voluntarily revealed information relating to the representation of Ms. Eichenwald, in violation of KRPC 1.6(a). The question then becomes whether the disclosure was permitted by KRPC 1.6(b).

"6.   An Oregon disciplinary case, decided under the Disciplinary Rules of the Code of Professional Conduct, addressed that issue. *In re Huffman*, 328 Or. 567, 983 P.2d 534 (1998). In that case, Huffman was charged with violating DR 4-101(B) for writing a letter, to the client's new counsel, that contained disclosures that were embarrassing and detrimental to the client.

"7.   The Oregon version of DR 4-101(B) was similar to KRPC 1.6 and provided as follows:

'(B)   Except when permitted under DR 4-101(C), a lawyer shall not knowingly:

(1)   Reveal a confidence or secret of the lawyer's client.

(2)   Use a confidence or secret of the lawyer's client to the disadvantage of the client.

(3)   Use a confidence or secret of the lawyer's client for the advantage of the lawyer.

. . . .

'(C)   A lawyer may reveal:

. . . .

(4)   Confidences or secrets necessary to establish a claim or defense on behalf of a lawyer in a controversy between the lawyer and the client. . . .'

*Id.* at 579. The court held as follows:

'. . . We find that the disclosures were both embarrassing and likely to be detrimental to [the client]. The fact that the [Respondent] made the disclosures to [the client]'s new lawyer does not alter the embarrassing and detrimental character of the disclosures.

'We reject the [Respondent]'s contention that his conduct falls under the exception in DR 4-101(C)(4). That exception is limited, by its terms, to disclosures that are *necessary* to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client. The [Respondent] already had established his claims against [his client], and there was no pending action against the accused by [the client] that required the accused to assert a defense. The disclosures were not required for the assertion of the accused's legal claims that his judgments against [the client] were valid. The [Respondent]'s letter was little more than a veiled attempt to intimidate [the client] and [his new attorney] in order to deter them from

challenging the [Respondent]'s judgments. The [Respondent] was not entitled to reveal [the client]'s secrets under DR 4-101(C)(4).'

*Id.* at 581. In the instant case, the disclosures made to Mr. Grissom were not authorized by KRPC 1.6(b).

"8.   First, the disclosures were not made to establish a claim or defense in any civil or criminal case. At the time the Respondent made the disclosures to Mr. Grissom, there was no pending action between the Respondent and Ms. Eichenwald.

"9.   Second, the disclosures were not made to respond to allegations in any proceeding. Certainly, at the hearing on this matter, the Respondent argued that the disclosures were made in response to allegations made by Ms. Eichenwald and in an attempt to protect his reputation in the legal community. However, there was no 'proceeding' as required by KRPC 1.6(b). The disclosures were simply made to embarrass Ms. Eichenwald before her new attorney.

"10.   Because the disclosures made to Mr. Grissom were not necessary to establish a claim or defense or to respond to allegations in any proceeding, the Hearing Panel concludes that the Respondent revealed information relating to the representation of Ms. Eichenwald in violation of KRPC 1.6(a).

*"Letter of September 11, 1999, to Kris Allen and Jennifer Knipp*

"11.   On September 11, 1999, the Respondent wrote a letter to Nordstrom store manager Kris Allen and Nordstrom Loss Prevention Manager Jennifer Knipp. Including a specific example, the Respondent disclosed to Mr. Allen and Ms. Knipp that the Respondent has a history of making false claims and accusations of stalking.

"12.   The Respondent's disclosure that Ms. Eichenwald has a history of making false claims amounts to revealing information relating to the representation of Ms. Eichenwald. And, because the disclosures were not authorized by KRPC 1.6(b), the Hearing Panel concludes that the Respondent violated KRPC 1.6(a).

*"Telephone Conversation with James P. Barton, Jr. Shortly Before*
*September 29, 1999*

"13.   Prior to September 29, 1999, the Respondent offered to provide Mr. Barton, counsel for Mr. Small, with negative information relating to the representation of Ms. Eichenwald. The Respondent made the offer to Mr. Barton conditioned upon reaching a settlement agreement beneficial to Ms. Worthington and Ms. Fuller and detrimental to Ms. Eichenwald. The offer to provide information, in violation of KRPC 1.6(a), was refused by Mr. Barton.

"14.   KRPC 8.4(a) provides that it is professional misconduct to '[v]iolate or attempt to violate the rules of professional conduct.' *Id.* In the criminal law setting, the Kansas legislature has defined 'attempt' as 'any overt act toward the perpetration of a crime done by a person who intends to commit such

crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime.' K.S.A. 21-3301(a). Thus, to find that the Respondent attempted to violate KRPC 1.6(a), the Hearing Panel would have to find that the Respondent committed an overt act toward the violation of KRPC 1.6(a). In this case, during the telephone conversation with Mr. Barton, the Respondent offered to provide Mr. Barton with information in violation of KRPC 1.6(a). The offer of information is an overt act done toward the perpetration of a violation of KRPC 1.6(a).

"15.   By offering to reveal information relating to the representation of Ms. Eichenwald, the Respondent, again, sought to do the opposite of what the Kansas Rules of Professional Conduct require him to do. The Respondent's ethical obligation to Ms. Eichenwald continued after she ended their personal relationship. The Respondent's ethical obligation to Ms. Eichenwald continued after he 'fired' her as a client. The Respondent's ethical obligation to Ms. Eichenwald was to make every effort to avoid revealing information relating to her representation. Because the Respondent attempted to violate KRPC 1.6(a) by offering to reveal information relating to the representation of Ms. Eichenwald to Mr. Barton, the Hearing Panel concludes that the Respondent violated KRPC 8.4(a).

*"Motion to Sever, Filed October 25, 1999 and Reply, Filed November 8, 1999*

"16.   On October 25, 1999, the Respondent filed a motion to sever Ms. Worthington's case from Ms. Eichenwald's case. After counsel for Mr. Small objected to the Respondent's motion to sever, the Respondent, on November 8, 1999, filed a reply. In paragraphs five and six of the motion and in paragraphs three, five, and seven of the reply, the Respondent disclosed the existence of *Bryan v. Eichenwald* and alleged that Ms. Eichenwald's credibility could be attacked by calling him as a witness.

"17.   Clearly, the inclusion of this information in the pleadings constitutes a violation of KRPC 1.6(a) in that it amounts to revealing information relating to the representation of Ms. Eichenwald.

"18.   Thus, the Hearing Panel must consider whether the Respondent was authorized to disclose the information relating to the representation of Ms. Eichenwald in the motion to sever. At the hearing on this matter, the Respondent argued that in order to protect Ms. Worthington's cause of action, he had to file the motion to sever. Additionally, the Respondent argued that in order to be successful in obtaining a severance of the cases, he had to disclose the existence of *Bryan v. Eichenwald* and Ms. Eichenwald's credibility problems. Unfortunately, the Respondent's legal analysis was wide of the mark.

"19.   KRPC 1.6(a) prohibits the Respondent from disclosing the information relating to the representation of a client, unless it falls within one of the clearly delineated exceptions. . . . The Respondent was not authorized to reveal the existence of *Bryan v. Eichenwald* and the fact that he possessed negative information regarding Ms. Eichenwald's credibility because the disclo-

sure was not made to (1) establish a claim or a defense in behalf of the Respondent in a controversy with Ms. Eichenwald, (2) establish a defense to a criminal charge or a civil claim against the Respondent based upon conduct in which Ms. Eichenwald was involved, or (3) respond to allegations in a proceeding regarding the Respondent's representation of Ms. Eichenwald.

"20. The Respondent made the disclosures in the pleadings to alert Mr. Small and his counsel to the existence of *Bryan v. Eichenwald* and to put them on notice that the Respondent had information regarding Ms. Eichenwald's credibility. The Kansas Rules of Professional Conduct do not authorize the disclosure of information relating to the representation of a client in this regard. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.6(a).

"21. The Respondent stipulated that he violated KRPC 1.7(b). That subsection provides:

'(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and
(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.'

The Respondent engaged in a personal relationship with his client, Ms. Eichenwald. The Respondent's stormy relationship with Ms. Eichenwald materially limited his representation of Ms. Eichenwald as well as his representation of Ms. Worthington. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.7(b).

"22. The Disciplinary Administrator also alleged that the Respondent violated KRPC 1.16(d). That subsection provides:

'Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.'

The Respondent failed to take the steps necessary to protect the interests of Ms. Eichenwald when he disclosed confidential information to Mr. Grissom, Mr. Allen, and Ms. Knipp, when he filed the motion to sever and the reply, and when he offered to provide counsel for Mr. Small with evidence. Such evidence could

have been, and in reality was, used to Ms. Eichenwald's legal detriment. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.16(d).

"23. KRPC 1.6 is designed to shield clients from the improper disclosure by their lawyers of information relating to their representation. Instead of recognizing KRPC 1.6 as a shield for Ms. Eichenwald, the Respondent repeatedly threatened to improperly use the exceptions to that rule against Ms. Eichenwald. Throughout his communications to Ms. Eichenwald, beginning with his termination letter of February 25, 1998, and continuing through the September, 1999, correspondences, the Respondent threatened to disclose information, including his February 25, 1998, letter, containing allegations of theft and fraud, to 'whomever might have a use for it.'

. . . .

"25. The facts of the instant case in that regard are quite similar to the facts in *In re Boelter*, 139 Wash. 2d 81, 985 P.2d 328 (1999), where a Respondent wrote the following letter to his client:

'[I]f we are not paid in full by October 15, 1991, we will file suit for the fees. You should understand that if we are forced to file suit, you forgo the attorney-client privilege and I would be forced to reveal that you lied on your statements to the IRS and to the bank as to your financial condition. This would entail disclosure of the tapes of our conversations about your hidden assets. There is a federal statute 18 U.S.C. § 1001 which provides for up to one year in jail for such perjury. The choice is yours.'

*Id.* at 90. In that case, the Washington hearing panel found that the letter constituted a violation of rule 8.4(c) because it amounted to a misrepresentation of the applicability of rule 1.6. The court went on to examine the scope of rule 1.6 as follows:

'. . . However, he would certainly not, as he claimed in his October 1991 letter to Withey, have been *"forced* to reveal that you lied on your statements to the IRS and to the bank as to your financial condition." . . . It is a leap in logic even to claim that such a disclosure could reasonably be made voluntarily, . . .'

*Id.* at 91. In the instant case, the Respondent was not required or authorized to reveal the information relating to the representation of Ms. Eichenwald, other than to establish his claim for defamation. Clearly, the Respondent either misinterpreted KRPC 1.6 or misrepresented KRPC 1.6. If the latter is true, then the Respondent, although not charged with such a violation, would be guilty of a violation of KRPC 8.4(c). The Hearing Panel, however, points out these matters not to find an uncharged violation, but rather to instruct the Respondent that his understanding of KRPC 1.6 is wrong."

The hearing panel also noted in a footnote to Conclusion of Law ¶ 18 that Bryan completely ignored the fact that he had a contin-

uing ethical obligation to Eichenwald. The panel noted that in order to comply with the KRPC while protecting the interests of Eichenwald and Worthington, Bryan should have withdrawn from representation of Worthington or, alternatively, filed a motion to sever that did not disclose information relating to the representation of Eichenwald.

The hearing panel made the following recommendation:

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duties Violated.* The Respondent violated his duty to his clients to avoid a conflict of interest and to protect confidential information. Additionally, the Respondent violated his duty to the legal profession to maintain personal integrity.

"*Mental State.* The Respondent *knowingly* violated his duties.

"*Injury.* In this case, Ms. Eichenwald suffered an actual injury. The Respondent repeatedly provided information relating to the representation to others. The disclosure of this information caused actual injury to Ms. Eichenwald. Although impossible to quantify, the legal profession also suffered an actual injury as a result of the Respondent's misconduct.

"*Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"Selfish Motive. The Respondent's motive to commit the misconduct was based purely on selfishness and vindictiveness. This case . . . exemplifies why it is inappropriate to become involved with a client.

"Refusal to Acknowledge the Wrongful Nature of his Conduct. While the Respondent admits that he violated KRPC 1.7, he adamantly denies that disclosing information relating to Ms. Eichenwald was inappropriate or in violation of the Kansas Rules of Professional Conduct. Certainly, with the passage of time the Respondent should be able to step back from the personal situation he found himself in and acknowledge that he should not have disclosed information regarding Ms. Eichenwald to others.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"Absence of a Prior Disciplinary Record. The Respondent has not previously been disciplined.

"Inexperience in the Practice of Law. The Respondent was admitted to the practice of law in Missouri in 1995 and in Kansas in 1996. At the time of the misconduct, the Respondent was a new lawyer. However, the inexperience in the practice of law did not contribute to the misconduct in this case. The misconduct in this case is based completely on the poor judgment of the Respondent.

"Previous Good Character. At the hearing on this matter, counsel for the Respondent, Mr. Hufft informed the Hearing Panel that the Respondent is a good attorney.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered Standard 4.32 and Standard 7.2. Standard 4.32 provides that '[s]uspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client.' Standard 7.2 provides that '[s]uspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system.'

"Although the ABA Standards seem to indicate that the Respondent should be suspended from the practice of law, the Hearing Panel unanimously recommends that the Respondent be censured by the Kansas Supreme Court. The Hearing Panel makes this recommendation based upon the recommendation of the Disciplinary Administrator. The Hearing Panel further recommends that the censure by published in the Kansas Reports."

## Formal Proceeding Requirement

Bryan contends that the hearing panel erred in finding that before disclosures of information obtained during representation may be appropriate under KRPC 1.6(b)(3), there must be a formal proceeding initiated. In support of his contention, Bryan cites to numerous authorities for the proposition that the lawyer's right to respond in self-defense arises when the assertion against the lawyer has been made and that the lawyer need not wait until an action or proceeding has been commenced to respond.

The Disciplinary Administrator agrees with Bryan's interpretation of KRPC 1.6 in that an attorney does not have to wait until the commencement of an action or proceeding before using information to protect himself or herself and concedes that the hearing panel's finding that Bryan violated KRPC 1.6 because there was no pending action between Bryan and Eichenwald was in error. See Conclusions of Law ¶¶ 3, 8, 9, 10. The Disciplinary Administrator maintains, however, that the panel's finding that Bryan vi-

olated KRPC 1.6 was also based upon its finding that the disclosures were made simply to embarrass Eichenwald. In making this assertion, the Disciplinary Administrator is referring to Conclusion of Law ¶ 9.

The Disciplinary Administrator asserts that the hearing panel's finding that Bryan violated KRPC 1.6 was correct because Bryan disclosed confidential information beyond what was necessary and allowed under KRPC 1.6(b)(3). To support this argument, the Disciplinary Administrator relies upon the Comment to KRPC 1.6, which states in part:

> "Where a legal claim or disciplinary charge alleges complicity of the lawyer in a client's conduct or other misconduct of the lawyer involving representation of the client, the lawyer may respond to the extent the lawyer reasonably believes necessary to establish a defense. The same is true with respect to a claim involving the conduct or representation of a former client. The lawyer's right to respond arises when an assertion of such complicity has been made. Paragraph (b)(3) does not require the lawyer to await the commencement of an action or proceeding that charges such complicity, so that the defense may be established by responding directly to a third party who has made such an assertion. The right to defend, of course, applies where a proceeding has been commenced. Where practicable and not prejudicial to the lawyer's ability to establish the defense, the lawyer should advise the client of the third party's assertion and request that the client respond appropriately. *In any event, disclosure should be not greater than the lawyer reasonably believes is necessary to vindicate innocence, the disclosure should be made in a manner which limits access to the information to the tribunal or other persons having a need to know it, and appropriate protective orders or other arrangements should be sought by the lawyer to the fullest extent practicable."* (Emphasis added.)

In his reply brief, Bryan asserts that his disclosures of confidential information to Grissom and Nordstrom employees were reasonable. He first argues that these disclosures were reasonable as a matter of law because the United States District Court of Kansas in *Bryan v. Eichenwald*, 2001 WL 789401 (D. Kan. 2001), determined that Eichenwald could not prevent Bryan from disclosing formerly confidential negative information in self-defense, and later determined, in denying Eichenwald's motion for summary judgment, that Bryan's claims were supported in fact and in law.

Additionally, Bryan argues that the hearing panel based its finding that he violated KRPC 1.6 solely upon the lack of a formal

proceeding at the time of disclosure. In support, Bryan relies upon a footnote in the panel's decision in which the panel stated that the disclosure made by Bryan of information gained during his representation of Eichenwald in filing his defamation suit was "clearly permitted by KRPC 1.6(b)(3)." Bryan accuses the Disciplinary Administrator of attempting to read into the panel's decision an additional finding that disclosure was beyond what was reasonable. Thus, Bryan asserts that the panel made no finding as to the reasonableness of the disclosures and that the matter should be dismissed because the disclosures were reasonable as a matter of law and clearly reasonable under the facts of the case. Furthermore, Bryan contends the final hearing report does not contain the necessary factual findings to support the violations found by the panel. Alternatively, Bryan asserts that he is entitled to another hearing before an impartial panel to determine whether his disclosures were reasonable.

In reviewing the conclusions of law of the panel, it is difficult to conclude that Bryan's disclosures to Grissom and the Nordstrom employees were reasonable; therefore, they constituted violations of KRPC 1.6. We note that the panel relied upon the erroneous belief that a formal proceeding was necessary before disclosures in self-defense could be made under KRPC 1.6. Under the circumstances, however, the disclosures to both Grissom and the Nordstrom employees exceeded that which was reasonably necessary for him to defend against Eichenwald's allegations.

## Post-Filing Disclosures

Bryan next takes issue with the panel's conclusion in Conclusion of Law ¶ 19 that he was not authorized to reveal the existence of his defamation suit against Eichenwald and that he possessed negative information regarding Eichenwald's credibility. In essence, Bryan argues that once this information was found to have been properly disclosed, all subsequent disclosures were appropriate. Bryan asserts that information previously disclosed to the general public in court pleadings does not retain any confidentiality that would prohibit subsequent disclosure of that information. In support, he cites *State v. Spears*, 246 Kan. 283, 287, 788 P.2d 261

(1990), where this court recognized that under K.S.A. 60-426 a partial waiver of the attorney-client privilege constitutes a complete waiver of the privilege *as to the entire subject matter*. Bryan contends that the Disciplinary Administrator is " 'picking and choosing' " and is incorrectly fixed on the "use" of the information that was properly disclosed rather than the fact the information had been properly disclosed. The Disciplinary Administrator disagrees with Bryan's assertions that he was entitled to reveal the information because it was already a matter of public record, distinguishing *Spears* from the facts of this case.

*Spears* involved attorney-client privilege rather than the ethical rule on confidentiality. The Comment to KRPC 1.6 states:

"The principle of confidentiality is given effect in two related bodies of law, the attorney-client privilege (which includes the work product doctrine) in the law of evidence and the rule of confidentiality established in professional ethics. The attorney-client privilege applies in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client. The rule of client-lawyer confidentiality applies in all situations other than those where evidence is sought from the lawyer through compulsion of law. The confidentiality rule applies not merely to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source. A lawyer may not disclose such information except as authorized or required by the Rules of Professional Conduct or other law."

The attorney-client privilege is narrowly defined by the courts because it works to deprive the factfinder in a case of otherwise relevant information. See *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 373, 22 P.3d 124 (2001). The ethical requirement of confidentiality is, however, interpreted broadly, with the exceptions being few and narrowly limited. Thus, Bryan's reliance upon *Spears* is misplaced.

The Disciplinary Administrator contends that even though Bryan was entitled to place into the public record this same information in filing his defamation suit, Eichenwald had an expectation of confidentiality that would prohibit Bryan from divulging the information in her malpractice action against Small. The Disciplinary Administrator cites for support *NCK Organization Ltd. v. Bregman*, 542 F.2d 128 (2d Cir. 1976), *(ORG)*, and *Kaufman v. Kaufman*, 63 App. Div. 2d 609, 405 N.Y.S.2d 79 (1978).

In *ORG*, defense counsel was disqualified after the plaintiff filed a motion to disqualify. Defense counsel had previously conferred with an individual who was the former vice president and former in-house counsel for the plaintiff, who later also became counsel for the defendant, regarding the defendant's contract rights against the plaintiff. The defendant's contract rights were the subject of the dispute between the plaintiff and the defendant. The *ORG* court held:

"The confidential nature of the information to which [the attorney] had access in his fiduciary capacity as house counsel is not dependent upon whether it was secret from or known to [the defendant] as a corporate officer and director. As the court, strictly to be sure, explained in *Emle Industries, Inc. v. Patentex, Inc.*, [478 F.2d 562, 572-73 (2d Cir. 1973)], quoting from H. Drinker, Legal Ethics 135 (1953):

'(T)he client's privilege in confidential information disclosed to his attorney "is not nullified by the fact that the circumstances to be disclosed are part of a public record, or that there are other available sources for such information, or by the fact that the lawyer received the same information from other sources." '

"The Code itself in Ethical Consideration (EC) 4-4 notes that

'(t)he attorney-client privilege is more limited than the ethical obligation of a lawyer to guard the confidences and secrets of his client. This ethical precept, unlike the evidentiary privilege, exists without regard to the nature or source of information or the fact that others share the knowledge. . . .'

"Even if, as [the attorney] asserted, all confidential information to which he as house counsel had access was independently known to [the defendant] from his own employment or from another source, ORG's privilege in this information as disclosed to its attorney . . . is not thereby nullified." 542 F. 2d at 133.

In *Kaufman*, the plaintiff in a matrimonial proceeding contended that the defendant's attorney had a conflict of interest. Defense counsel had previously represented the plaintiff in a different matrimonial proceeding and was privy to all the facts and circumstances surrounding the plaintiff's financial and matrimonial problems. The *Kaufman* court dismissed the attorney's claim that all the information he received was from public records, relying upon *ORG*, and remanded the issue for an evidentiary hearing on whether there was a conflict of interest. 63 App. Div. 2d at 610.

Bryan argues that these cases have no application to the facts of this case because neither case involves the self-defense exception to confidentiality or the rights of and obligations to an innocent

third party such as Worthington. Bryan contends that it is "absurd" to think that Eichenwald maintained an expectation of confidentiality after he filed open court pleadings in the defamation action against Eichenwald. Bryan asserts that in this case Eichenwald's privilege of confidentiality was "nullified" by the exceptions set out in KRPC 1.6(b)(3).

Although *ORG* and *Kaufman* involve different facts, the cases are relevant because they address the survival of the ethical duty of confidentiality in instances where the information was available through other sources. The Comment to KRPC 1.6 states: "A lawyer may not disclose [information relating to the representation] except as authorized or required by the Rules of Professional Conduct or other law." Bryan's disclosures in the motion and reply involved information related to the representation but were not reasonably necessary to defend against his claim of defamation.

### Duty to Current Client

Alternatively, Bryan asserts that even if disclosure of this information was restricted, the attorneys for Small were persons having a need to know under the Comment to KRPC 1.6 and, therefore, the disclosures were reasonable. Bryan supports his position by claiming that if the case by Eichenwald and Worthington against Small remained consolidated, his being called to testify against Eichenwald would negatively impact not only Eichenwald, but also Worthington. Thus, he asserts that his disclosures were necessary to allow the action to be to severed. Bryan asserts that the hearing panel's comment that he should have either withdrawn from the representation of Worthington or filed a motion to sever that did not disclose the protected information was unrealistic. Bryan contends that withdrawal would not have altered the result because he would have been obligated to disclose to Worthington's new counsel the existence of his defamation case against Eichenwald and why it could damage Worthington's case. Bryan points out that this same disclosure would not have been a violation of the KRPC if the new attorney in Worthington's case had obtained this information from the public record of the defamation suit and cited it as grounds in support of a motion to sever. Additionally, Bryan

argues that a motion to sever that did not disclose information relating to his representation would have failed because there was no other ground for severance to be granted.

The Disciplinary Administrator noted that the release of confidential information to protect one's self is quite different from the release of information to the disadvantage of your former client and to the advantage of your current client. The Disciplinary Administrator agrees with the hearing panel's conclusion that Bryan should have withdrawn from representation of Worthington rather then disclose confidential information regarding his former client.

In his reply brief, Bryan contends the hearing panel's and the Disciplinary Administrator's conclusions amount to a determination that Eichenwald's "already nullified claims of confidentiality outweigh Ms. Worthington's Constitutional right to a fair trial."

The duty of confidentiality continues after the lawyer-client relationship has terminated. Comment to KRPC 1.6. Bryan's withdrawal from representation of Worthington would not have required Bryan to disclose the basis for the withdrawal as Bryan contends. Bryan could have served the interests of both Worthington and Eichenwald by withdrawing from the representation of Worthington, rather than serving the interest of Worthington at Eichenwald's detriment.

The court notes the dissent to the final hearing report in which M. Warren McCamish dissented from the panel's finding that Bryan's disclosures in the motion to sever and reply were a violation of KRPC 1.6. McCamish dissented from Conclusions of Law ¶¶ 16-20 in making this determination. The basis for his dissent on this ground was that he did not believe that Bryan's disclosure of information in the motion to sever and in the reply violated KRPC 1.6. Instead, McCamish viewed the disclosure as being a disclosure of publicly available information and a disclosure that was engaged in to fulfill Bryan's duty to his current client, Worthington.

We find that Bryan violated KRPC 1.6 in making the disclosures to Grissom, the Nordstrom employees, and in the litigation against Small because some of the disclosures were not reasonably necessary to defend against Eichenwald's accusations. We conclude that Bryan was in fact attempting to violate KRPC 1.6 in offering

to disclose "negative information." Therefore, we also agree with the hearing panel's finding that Bryan violated KRPC 8.4(a).

## FINDINGS OF FACT

This court has the duty in attorney disciplinary cases to examine the evidence and determine for itself the judgment to be entered. *In re Rausch*, 272 Kan. 308, 320, 32 P.3d 1181 (2001); *In re Carson*, 252 Kan. 399, 406, 845 P.2d 47 (1993). Attorney misconduct must be established by substantial, clear, convincing, and satisfactory evidence. Supreme Court Rule 211(f) (2002 Kan. Ct. R. Annot. 260); *In re Seck*, 263 Kan. 482, 489, 949 P.2d 1122 (1997); *In re Smith*, 243 Kan. 584, 585, 757 P.2d 324 (1988). A hearing panel's report is advisory only; however, it will be given the same dignity as a special verdict by a jury or the findings of a trial court and will be adopted where amply sustained by the evidence, or where it is not against the clear weight of the evidence, or where the evidence consists of sharply conflicting testimony. *In re Wall*, 272 Kan. 1298, 38 P.3d 640 (2002); *In re Carson*, 252 Kan. at 406. Thus, this court is to examine disputed findings of fact and determine whether they are supported by the evidence. See *In re Seck*, 263 Kan. at 489.

Bryan challenges the hearing panel's findings that were contrary to the stipulated facts. Bryan specifically takes issue with Findings of Fact ¶¶ 13, 23, 28, and Conclusion of Law ¶ 15. Furthermore, Bryan contends that the panel considered numerous matters that were irrelevant and which affected its impartiality, thus denying him his right to due process as guaranteed by both the United States and Kansas Constitutions.

We note that in addition to the stipulated facts, the hearing panel also received into evidence both parties' exhibits without objection. Thus, the hearing panel had additional facts contained in the exhibits at its disposal in reaching its findings of fact in this case. Therefore, as long as the panel's findings were supported by the evidence before it, the fact the findings are contrary to the stipulated facts is irrelevant.

The Disciplinary Administrator contends that Bryan's position on this issue is not relevant to the court's decision in this case.

However, in order to determine whether Bryan's claim has merit, each individual fact Bryan takes issue with must be examined.

### Finding of Fact ¶ 13

Bryan contends that the parties stipulated that Bryan had terminated his relationship with Eichenwald because he believed that she had lied to him, that he no longer believed her, and that he had stopped representing her because a conflict of interest became apparent. He asserts that the language of Finding of Fact ¶ 13 is contrary to the stipulated facts. He takes issue with the following language in this finding of fact: "Because the Respondent resented the fact that Ms. Eichenwald was again seeing Mr. Opel, on February 25, 1998, the Respondent sent Ms. Eichenwald a letter terminating his representation of her."

Stipulated Fact ¶ 9 states:

"On or about February 21, 1998, Respondent learned that Ms. Eichenwald was once again seeing John Opel. Respondent concluded that Ms. Eichenwald had lied to him. Further, he decided that he had to quit representing her in any litigation."

The Disciplinary Administrator asserts that the finding of fact was not contrary to the evidence before the hearing panel, relying upon the following statement of Bryan at the hearing:

"Now, as far as the letters I sent—well, first off, I'm sorry about the February 25th, 1998 letter, because that letter and the decision to terminate her as my client is clearly based on anger over her seeing another man, and I understand that and that's not right."

Thus, Finding of Fact ¶ 13 is supported by the evidence that was before the hearing panel.

### Finding of Fact ¶ 23

Bryan contends that the hearing panel's finding that Eichenwald offered to resolve the issues through mediation was an invention of the panel. Bryan asserts that Eichenwald's offer to mediate was not sincere and was an attempt to bolster her claim that Bryan was stalking her and would jump at any opportunity to meet face-to-

face with her. Bryan admits that most of the evidence as to Eichenwald's insincerity is not in the record.

The record indicates that Eichenwald offered to mediate the matter and discuss it with a neutral party in order to keep the matter out of court. Bryan responded to Eichenwald's offer by stating:

"Please be advised that there will be no mediation of any kind, and no meetings between us. There is nothing for us to discuss with any neutral party. I find it curious that after you have told everyone that I'm stalking and you are in danger from me, you now want to have a face-to-face meeting with me."

In response to a question by a panel member as to why he did not accept Eichenwald's offer to mediate, Bryan responded that he did not consider it to be a serious offer, that he believed she had been encouraged by someone else to make the offer, and that he believed that agreeing to meet with her would be construed as further evidence of his alleged obsession with her.

The hearing panel's finding is supported by the evidence. The panel did not find that the offer by Eichenwald was in fact sincere, just that she made the offer. Furthermore, the disclosure that resulted from the filing of the lawsuit is not at issue. Thus, whether or not Bryan should have accepted the offer to mediate is irrelevant.

## Finding of Fact ¶ 28

Bryan contends that this finding of fact is "despicable." He argues that the panel's finding amounts to a finding that he provided extensive information (*e.g.*, copy of petition to foreclose on Eichenwald's grandmother's house) because he was obsessed with or is still obsessed with Eichenwald. He asserts that he disclosed everything because he was unsure of what information might be necessary to adequately respond to the investigation. Bryan notes that this appears to be the first case in which an attorney was found at fault for disclosing too much information to the investigator in a disciplinary case, thus punishing him for his cooperation. Additionally, Bryan points out that he had previously stated in the investigation that he had spoken with Eichenwald at her place of employment only once and that the discussion included, among

other things, the foreclosure. Thus, he asserts that the existence of the foreclosure bolsters his credibility on this claim.

The Disciplinary Administrator asserts that the finding of the panel was supported by evidence and that it is easy to conclude that the irrelevant items in Bryan's response were included only to embarrass Eichenwald and to place that information into the public record.

We need not address whether this finding is supported by the evidence because it is irrelevant. This finding had no effect upon the panel's conclusions regarding discipline.

### Conclusion of Law ¶ 15

Bryan takes issue with this conclusion because the evidence before the hearing panel was that he, rather than Eichenwald, had ended the relationship. Bryan admits that this finding is irrelevant; however, he asserts that the panel included the finding because it would be impossible for Bryan to be a "stalker" if he were the one that ended the relationship. The Disciplinary Administrator agrees with Bryan that this issue is irrelevant.

The evidence before the panel was that Eichenwald ended the personal relationship with Bryan prior to Bryan terminating the lawyer-client relationship on February 25, 1998, because the termination letter was in response to her "seeing another man." However, as the parties agree, the identity of the person who broke off the relationship is irrelevant in this disciplinary proceeding. Thus, this court will not address whether this finding is supported by the evidence.

### SUMMARY JUDGMENT

Bryan contends the hearing panel erred in failing to consider his motion for summary judgment that was filed prior to the hearing in this matter. The Disciplinary Administrator's office objected to the filing of the summary judgment motion and requested that the motion be stricken from the record and that it not be required to respond. The record does not indicate that the panel made any determination as to whether the Disciplinary Administrator's office was required to respond to the motion.

At the hearing, the panel reserved ruling on the motion for summary judgment. In the final hearing report, the panel denied Bryan's motion for summary judgment, stating:

"Prior to the hearing, on February 13, 2002, the Respondent filed a motion for summary judgment. Thereafter, on February 21, 2002, the Disciplinary Administrator objected to the motion for summary judgment on procedural grounds. At the outset of the hearing, the Hearing Panel informed the parties that it was taking the motion under advisement and would issue a ruling in the Final Hearing Report.

"Included in the Stipulated Facts is an admission by the Respondent of a violation of KRPC 1.7(b). Further, as noted below, the Hearing Panel finds that Respondent violated multiple disciplinary rules. The stipulation and findings of the panel are dispositive of the motion for summary judgment on a substantive basis.

"In addition, however, the Hearing Panel finds that Summary Judgment as contemplated by K.S.A. 60-256(b) and Kan. Sup. Ct. R. 141, is so inconsistent with the procedures established in the Kansas Supreme Court Rules Relating to Discipline of Attorneys that they cannot apply to these proceedings.

"The Respondent cites K.S.A. 60-256(b), Kan. Sup. Ct. R. 141, and Internal Operating Rules §§ D.1 and D.2. as procedural authority for the motion.

"The Hearing Panel is mindful of Kan. Sup. Ct. R. 224(b) which states: 'Except as otherwise provided, the Rules of Civil Procedure apply in disciplinary cases.' Clearly, K.S.A. 60-256(b) is part of the Rules of Civil Procedure. However, in the opinion of the Hearing Panel, summary judgment conflicts so dramatically with concepts underlying the Rules Relating to Discipline of Attorneys that the two procedures cannot coexist.

"The reasons underlying the Hearing Panel's opinion in this regard are as follows:

"Internal Operating Rule § D.4, limits discovery to an extent that precludes developing a complete record, upon which, summary judgment could be considered.

"In contested cases, the Rules Relating to Discipline of Attorneys, without a doubt, contemplate an assessment of the character of the Respondent, as well as the Respondent's conduct. The Hearing Panel believes, in many instances, the nuances necessary to determine if an action constitutes a violation of the disciplinary rules can only be derived from the live testimony of witnesses.

"More importantly, Kan. Sup. Ct. R. 211.(f) requires the Hearing Panel, in recommending discipline, to consider mitigating and aggravating circumstances. The mitigating and aggravating circumstances set forth in the ABA Standards for Imposing Lawyer Sanctions clearly require the Hearing Panel to assess the Respondent as a person as well as an attorney. This important aspect of the Hearing Panel proceeding cannot be accomplished in the context of a motion for summary

judgment. It must be done in person. Accordingly, the Hearing Panel denies the Respondent's motion for summary judgment."

Bryan cites in his brief to numerous internal operating procedures of the Disciplinary Administrator's office that he believes expressly allow for the filing of virtually any pretrial motion. Furthermore, Bryan contends that the hearing panel should have solely considered the uncontroverted facts that accompanied the motion for summary judgment, which he contends were not at odds with the stipulated facts, in determining whether there was a violation of any rule under the facts of the case. The Disciplinary Administrator contends the findings of the panel are correct.

The propriety of a motion for summary judgment in disciplinary proceedings appears to be an issue of first impression. Bryant notes that pursuant to Supreme Court Rule 224(b) (2002 Kan. Ct. R. Annot. 301), "[e]xcept as otherwise provided, the Rules of Civil Procedure apply in disciplinary cases." Bryan further points out that the Kansas Rules of Civil Procedure, K.S.A. 2001 Supp. 60-256(a), allow a party "seeking to recover upon a claim, counterclaim or cross-claim or to obtain a declaratory judgment may . . . move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

Bryan fails to note that Supreme Court Rule 211 (2002 Kan. Ct. R. Annot. 260) does provide otherwise. Under Rule 211, the hearing panel's decision not to recommend discipline or to dismiss the complaint is final if not appealed by the Disciplinary Administrator. If, however, the hearing panel recommends discipline, the final hearing report of the panel is submitted to this court for consideration and disposition. Supreme Court Rule 211(f). This court has the duty to examine the evidence and render final judgment. *In re Rausch*, 272 Kan. at 320. The hearing panel's report is advisory only. *In re Wall*, 272 Kan. at 1298. Rule 211 provides the procedure to be followed by the panel. The filing of a motion for summary judgment is inconsistent with the procedure established by this court for the discipline of attorneys. Thus, K.S.A. 2001 Supp. 60-256(a) is not applicable to disciplinary proceedings.

The hearing panel's findings of fact are supported by clear and convincing evidence. Bryan violated KRPC 1.6(a), 1.7(b), 1.16(d),

and 8.4(a), and the hearing panel's recommendation for discipline, published censure, is adopted.

IT IS THEREFORE ORDERED that the respondent, David Mc-Lane Bryan, be and he is hereby disciplined by published censure in accordance with Supreme Court Rule 203(a)(3) (2002 Kan. Ct. R. Annot. 224) for his violations of the KRPC.

IT IS FURTHER ORDERED that this order be published in the official Kansas Reports and the costs of this action be assessed to the Respondent.